CITY OF LITTLE ROCK V. BOARD OF IMPROVEMENTS, ETC.

TAXATION: *City local improvements: Act of March 22, 1881 constitutional.*
  The act of March 22, 1881, for regulating the manner of assessing real
    property for local improvements in cities of the first class is constitu-
    tional, and if the city council refuse to levy a tax on the real property
    of an "improvement district" to complete an improvement therein, as
    reported by the board of improvements, it may be compelled to do so
    by mandamus.

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Circuit Judge.

*W. L. Terry*, City Attorney, for appellant.

1. Under sections five and fifteen of the act of March
22, 1881, entitled "An act to regulate the manner of as-
sessing real property for local improvements in cities of
the first class," the city council are left without any dis-
cretion, and are compelled to levy a tax for such amount
of estimated cost or deficiency as may be certified to them
by the board of improvement, and thereby the taxing
power is made subservient to the contracting power lodged
in the board. In other words, the practical and necessary
legal effect of the act is to separate the taxing power and
the contracting power, and make the former absolutely
dependent upon the latter, leaving in the hands of the mu-
nicipality only the shadow of the taxing power, and put-
ting the substance of it in the hands of the board, and
this amounts to the same thing as conferring the taxing
power upon the board in the first instance. The power to
tax necessarily implies discretion, and when that discre-
tion is taken away, and the taxing power made a mere
kite-tail to some other power to which it has been attached,
he latter is the real power and the former but a shadow.

Under section 23, article 2, Constitution, the Legislature could not delegate any portion of the taxing power to this board. If they could not do so directly, can they do so indirectly?

Under the present Constitution the Legislature can not delegate any portion of the sovereign power of taxation to "taxing districts," except "school districts," which are provided for in section 3 of article 14. (See also sections 3 and 4, article 12.) Section 27 of article 10, relied on by the board, must be construed in connection with the sections last above referred to, and especially with that section embodied in the bill of rights. See also *Cooley on Taxation,. pages 48, 49, 50 and 51, and Dillon on Municipal Corporations 3d ed., vol. 2, sec. 770, note 1, citing 4 Bush. (Ky.), 464.*

2. That under section 27, article 19, the tax for local improvements must be based upon the consent of a majority in value of the property holders owning property "adjoining the locality to be affected."

The city contends that under this provision of the Constitution it is not competent for the Legislature to pass a. law by which a large body of territory may be thrown into a district, and persons who live a dozen blocks or more away from the locality to be affected shall be thrown into hotch-potch with a large number of others whose property will be immediately benefited by the improvement for which the tax is laid. Upon this point see case of *Arnold v. Cambridge, 106 Mass., 352.*

*John M. Rose* for appellee.

This act (Acts 1881, p. 161) was passed under the provisions of *section 27 article 19 Constitution 1874.* Assessments for local improvements have always been sustained even without constitutional authority. *Cooley on Taxation, 429.*

There is no constitutional provision vesting any power

of any kind in the city council, or recognizing such a body. . The powers it has are derived from the act of 1875 organizing municipal corporations. The Legislature can alter or amend that charter or abolish it at pleasure. (*Dillon on Mun. Cor.*, *54*). Hence there is no separation of the contracting and taxing powers, or making the city council subject to the board, as contended for. The city and the board depend entirely upon the Legislature for their powers, and it could have created a board entirely independent of the council, one that could have made its own contracts and levied and collected a tax to pay them.

The contention of the city, that the taxing power could not be separated from the contracting power, was based on the idea that the city could not delegate her powers ; that the city council, being the taxing power, must necessarily decide on what contracts should be made, because the contract had to be fulfilled by the levy of a tax. But the Legislature has not vested in the council any power to make these sewers, nor has the Constitution conferred any powers of a similar kind. The council is simply a creature of the Legislature, and its powers can be changed at the pleasure of that body. The Constitution expressly says that these improvements may be made under such regulations as may be prescribed by law. This act prescribes these regulations, and is not unconstitutional.

EAKIN, J. The appellees were organized as a board of improvements for the city of Little Rock, under an act of the General Assembly, approved twenty-second of March, 1881, for regulating the manner of assessing real property for local improvements of the first class.

By petition to the Circuit Court on the eighth of October, 1883, they represented that, under the provisions of the act, the city council had levied a tax on certain sewer

districts of the city, numbered 2, 3 and 4; upon which the board had proceeded to construct sewers, and had exhausted the levy, leaving a deficiency; the amount of which they had certified to the council, and had demanded a levy to cover, together with an amount sufficient to complete the sewers; indicating the rate of taxation which would be required for said districts, severally. This having been refused, the petitioners prayed a mandamus to compel it.

The city demurred; and also responded, setting up in the response that the said act was unconstitutional, in so far as it required the city to make an additional levy upon the real property in the districts for any amount which the board might report to be necessary to complete the improvements. That the council had already made a levy for an amount sufficient to pay the costs of the construction of sewers, according to the first estimates made by the board; and that the board had furnished no proper vouchers for the expenditure of the large amount of money which had come into their hands; but, being called upon, had refused to do so.

Further, that the board had mismanaged and misappropriated a large portion of the fund, and that the amount of the levy demanded was far in excess of what would be really necessary, upon a due and proper account of what had already come to their hands.

Further, that the power of the council to make such levies could only be exercised by the " consent of a majority in value of the property holders owning property adjoining the locality to be affected;" and that the petitions from such owners, in said districts, had only authorized a levy of the actual amount required to pay the costs of constructing sewers therein; from which it followed that the council could not make the additional levy for said deficiency, inasmuch as it had no means of testing the

accuracy of the statements sent in by the board regarding the deficiency; and that the council had, therefore, declined to comply with the demand until the board should produce, before a committee appointed by the council, proper evidences of the correctness of their report. They pray that the mandamus be denied, and the petition dismissed. To this response there was a demurrer.

Upon the pleadings, the court directed an alternative mandamus, ordering the council, upon the production before its committee of the vouchers and accounts of the board concerning said districts, to examine the same, and, if found correct, to proceed on the thirteenth of November, 1883, to make the levy required, or show cause on the sixteenth of November why it had not been done.

It seems that the vouchers and accounts were produced before a committee. On the fourteenth of November the city appeared and responded that the committee had not had time to make a full investigation, and requested time till the twenty-seventh of November. By approval of the court the time was granted, and the response of the council was filed on the twenty-eighth, to this effect:

That the council, through its committee, had found the vouchers and accounts of the board correct, as to the fact of the expenditure of the fund raised by taxes; but that it could not indorse the manner of the expenditure already made, or that proposed to be made of the supplemental fund, if the tax should be levied. Whereupon it had, by resolution, instructed its attorney to test the constitutionality of the law under which the board was organized. Thereupon it asked to renew the demurrer to the original petition for mandamus, which had been passed without action. The causes of the new demurrer being:

1.   Want of sufficient facts for relief.
2.   That the law was unconstitutional.

Upon the twelfth of December the cause was heard on both demurrers—that of the petitioners to the response of the city, and that of the city to the original petition.

The former was sustained and the latter overruled. The city rested and the mandamus was made peremptory to make the levy on the eighteenth of that month. The city appeals.

The record presents for our consideration no other question than the constitutionality of the law. If it be valid, no reason appears why the mandamus should not have gone. The material provisions of the law, as found in the pamphlet acts of 1881, p. 161, are as follows:

Section 1 generally confers on city councils of the first class the power to assess all real property within the city, or any district of it, for the purpose, amongst other things, of "constructing sewers, or making any improvements of a local nature."

The second and third sections provide that, upon petition of ten resident owners, the council shall lay off the city or any portions of it, into "improvement districts" for local improvements, to be designated by numbers; and make publication of the order. It is provided that if, within three months after the publication, a majority in value of the owners of real property within such district adjoining the locality to be affected shall present a petition for the contemplated local improvement, the cost to be assessed upon the real property within the district, the council shall appoint three residents of the district as a board of improvement, to act without compensation. Provisions are made for qualification of the members, filling the vacancies, etc.

By sections four and five it is made the duty of the board to form plans for the improvement designated in the petition, and procure estimates of the cost, employing nec-

essary engineers and agents, and report to the council ;. which is then to assess the cost on the real property of the district, according to its value as shown by the county assessment on file in the clerk's office, with the proviso that no single improvement shall cost more than 20 per cent. of the value of real property in the district. Provision is made for the collection of the assessment by installments, so that no more than one per cent. of the value per annum shall be collected ; and the form for a proper ordinance is given. By section 6 the ordinance is required to be published, and twenty days are given any one aggrieved to commence proceedings to test its validity.

By section 7 the city clerk is required to procure a copy of so much of the county assessment as contains the property affected, and to extend against each parcel the assessment so made, and deliver it to the district collector with a warrant for collection ; who, by section 8, is required to give notice by publication. Then follow other sections providing in detail the modes of enforcing payment of the levy, and the disposition of the fund upon the order of the board.

Then follows section 15, as follows :

" If the assessment first levied shall prove insufficient to complete the improvement, the board shall report the amount of the deficiency to the council, and the council shall, thereupon, make another assessment on the property assessed, for a sum sufficient to complete the improvement, which shall be collected in the same manner with the first assessment."

There are many other sections in the act, none of which however, it is conceived, affects the points made on this appeal. The act is a general one, applicable to all cities, as they may attain the dignity of first class.

It is urged by counsel for the city that, under sections 5

and 15 of the act, the council is left with no discretion in levying the tax, but is entirely subject in this regard to the control and discretion of the board of improvement— being thus made dependent upon the contracting power ; or, in effect, that the act makes the board itself the taxing power, and that under section 23, article 2, the Legislature could not delegate this power to the board, either directly or indirectly. That this sovereign power can not be delegated to districts, except " school districts," which are specially provided for in the Constitution.

The twenty-third section of article two provides that " the General Assembly may delegate the taxing power with the necessary restriction, to the State's subordinate, political and municipal corporations, to the extent of providing for their existence, maintenance and well being." We understand the argument to be that, whilst the General Assembly might well enough have granted this taxing power to the cities themselves, through their constituted authorities, it could not grant it to a board in a city, representing only a portion of the territory and inhabitants ; and that the provision authorizing taxes by school districts indicates an intention by the framers of the Constitution to exclude by implication all other local boards.

Upon the other hand the counsel for the board rely upon section 27 of article 19, which, save the schedule, is the closing section of the Constitution, and provides that nothing therein " shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected. But such assessments shall be *ad valorem* and uniform." They insist that all other provisions which precede this are to be

construed in connection with, and subject to, this; and that the intention of it is to repel the idea that any express or implied prohibitions as to the exercise of the taxing power should interpose with such regulations with regard to assessments for local improvements in towns and cities as the Legislature might deem expedient—subject only to the conditions that the assessments should be *ad valorem* and uniform, and based upon the assent of a majority, in value, of the owners of property adjoining the locality.

It is certainly true that the power of taxation is a sovereign power, which, as a general rule, must be exercised by the Legislature of the State; and, even in the absence of express constitutional prohibitions, can not be delegated. The principle is considered to underlie all constitutions, as one of those which are taken for granted in all free governments; and so pervade the constitutions that their expression is not deemed essential. But this does not prevent a regulation of the taxing powers by express provisions in those instruments. It is simply *prima facie*. Whenever a constitution speaks on this subject it governs. Besides, even to the general rule there is an exception equally implied by silence, which is thus expressed by Mr. Cooley in his work on Taxation, page 51: "One clearly defined exception to the general rule exists in the case of municipal corporations, in the levy and collection of local taxes. Immemorial custom, which tacitly or expressly has been incorporated in the State constitutions, has made them a part of the general machinery of State government; and, in their case, the State does little beyond prescribing rules of limitation, within which, for local purposes, the power to tax is left to them, with authority subordinate to that of the State to make rules for its regulation and execution."

This principle was the governing one in the case of *Washington v. State*, 8 English, p. 761.

We do not understand counsel for appellant to contest this, although its expression is necessary in this connection. We understand them to say that the taxing power of municipalities can be exercised alone through the city council, and that neither the Legislature nor the council can delegate it to another body in the city, even though that body be officially created, and the tax be for purposes of local improvement only, and not for city or State revenue; and further, that although the levy of the tax, or assessment as it is called, be in form imposed by the council, yet it is really done by the board of improvement. They are well entitled to assume the last point, since the petition for mandamus implies that the city council has absolutely no discretion, or option, in the matter whatever.

The question narrows then to this: Conceding, both on general principles and from the terms of the Constitution, that the Legislature may grant *municipalities*, by general laws, the power to assess taxes, *ad valorem*, within prescribed limits, and on certain conditions, for purposes of local improvement, must that power be exercised through the agency, and in the discretion of the city councils?

Looking simply to the character and objects of *local improvements* there is nothing in their nature to make it most proper to commit their determination to the discretion of a city council, further than to see that their execution does not interpose with the city police. The council, as a body, generally represents, principally, inhabitants who are not concerned in special local improvements such as sewerage, the influence of which does not extend very far. It might be very unjust to leave inhabitants of a particular quarter dependent upon the caprice of the inhabitants of all the city for sewers of vital importance, or liable

to have sewers constructed which they do not need. It may well be that powers of taxation authorized to be delegated for revenue or general police purposes, should be presumed to have been intended to be delegated to the city council; but that presumption would not necessarily attach to the original determination as to the necessity or propriety of local improvements. Such things would naturally be better left to the inhabitants of the locality, although, when determined upon, the execution of the works might be properly put under the control of the council, and the machinery of the city government used for enforcing the assessments. These things may all be well regulated by general laws, which in the main would be beneficial to the greatest number. It will be well to add, in response to another point made by appellant, that this might indeed be a hardship upon the local minorities, and it would be in any case impossible accurately to adjust the burden upon respective property holders, in proportion to the benefits to the individual property of each, and that the power, in practice, might be woefully abused.

The court is conscious of all that, but can not entertain it as a constitutional objection. All human systems of government must be imperfect in the precise adjustment of benefits and burdens. If that were essential to the validity of the laws, there could be no legislation. We can find no human depository of discretion that may not be abused, nor can we invent a system of counter checks that will dispense with discretion somewhere. The Constitution does not require an adjustment of taxes according to actual benefits. "*Ad valorem*" means a quotient part of the existing value of property, not an adjustment of burdens to each individual man, in view of his particular gains or damages. Legislatures must simply do what seems the best to them, practically, and which may not be

prohibited either by great fundamental principles assumed as foundations of the government, or by the Federal and State Constitutions. Unless we can say with reasonable assurance that one or the other of these has been violated, we can not pronounce an act unconstitutional.

The State, for their well being, may delegate the taxing power to her subordinate political and municipal *corporations* (*Const., art. 2, sec. 23*), restricting it so as to prevent abuse, and also as to amount. (*Ib., art. 12, secs. 3 and 4.*) To prevent misapprehension, it is expressly provided that nothing in the Constitution shall *prohibit* the General Assembly from authorizing assessments *in towns and cities* for purposes of the nature in question, under such regulations as may be prescribed by law. In no place does it seem to be intimated that this delegation must necessarily be to the " city councils." In this case the grant is to the cities, for the benefit of citizens and proper holders therein, and the delegated powers are to be executed by city agencies, and collections made under the control of the city authorities. It seems to us too nice and doubtful a construction of constitutional intent, to hold invalid a delegation of taxing power to be exercised through such an agency as an official "board of improvements." The law prescribes regulations according to the requirements of the Constitution, and within its limits. We find no error.

Affirm.