## CARSON *v*. ST. FRANCIS LEVEE DISTRICT.

### Opinion delivered July 21, 1894.

1. *Constitutional law—Powers of State government.*
   As the State government is not one of merely delegated powers, one who questions the constitutionality of a legislative enactment must affirmatively show that it is within the restrictions of the Federal or the State constitution, and every doubt arising in controversies of this kind must be resolved in favor of its validity.

2. *Special legislation—Discretion of legislature.*
   The legislature is the exclusive judge in determining when a general law will not subserve the purpose sought as well as a special act, under sec. 25, art. 5, Const. 1874, which provides that "in all cases where a general law can be made applicable, no special law shall be enacted."

3. *Delegation of taxing power—Levee board.*
   The delegation to a levee board of the power to tax the property to be specially benefited by the levee is not impliedly prohibited by sec. 23, art. 2, Const. 1874, providing that "the general assembly may delegate the taxing power, with the necessary restrictions, to the State's subordinate political and municipal corporations, to the extent of providing for their existence, maintenance and well being, but no further;" nor by sec. 27, art. 19, *Ib.*, providing that "nothing in this constitution shall be so construed as to prohibit the general assembly from authorizing assessments on real property for local improvements in towns and cities."

4. *Special act—Conferring corporate powers.*
   A special act conferring corporate powers upon a board of directors appointed to build and maintain a public levee, in order to the more efficient performance of the duties imposed upon them, is not such an act as is prohibited by Const. 1874, art. 12, sec. 2, which provides that "the general assembly shall pass no special act conferring corporate powers, except for charitable, educational, penal or reformatory purposes, where the corporations are to be and remain under the patronage and control of the State."

5. *Levee assessment—Due process of law.*
   An act creating a levee district, which provides that the assessors, at a time named, shall make their assessments of the lands

in the district, that, at a time and place named, they shall meet and equalize their assessments, the result of which shall be the assessment for that year, and that foreclosure suits shall be brought to collect the assessments not paid, does not authorize a taking of property without due process of law, as, if the landowner is not entitled to question the validity of the assessment before the board, he has an opportunity to do so in the subsequent suit for its collection.

6. *Local assessment—Liability of land-owner.*

Where an assessment for building a levee is to be levied on the increase in value of the land by reason of the improvement, one whose lands, situated in the levee district, are not subject to overflow cannot object that his lands are assessed, as his liability depends, not upon the fact that the lands are subject to overflow, but upon the fact that they will be benefited by the improvement.

Appeal from Craighead Circuit Court in Chancery, Jonesboro District.

JAMES E. RIDDICK, Judge.

*John B. Jones* for appellants.

The theory of our government is that the taxing officers of local districts shall be elected by the local district to be taxed, or appointed in some manner to which the district has assented; and that such officers shall be answerable, to those directly interested, for their official acts. Under this act, the directors of the corporation are to be forever appointed by the Governor. The landowners have no voice in the control of the corporation, or the expenditure of the money they pay. The right of local self-government began with the beginning of the civilization of the Anglo-Saxon race, and was transplanted here with the common law. It is peculiarly American. It is the birth-right of our race; the sheet anchor of our political freedom; the foundation stone of our structure of government. This act is void, for the reason that it destroys the right of local self-government. The legislature cannot take away the right to local self-government, because the constitution assumes its con-

tinuance as the undoubted right of the people, an insepa-
rable incident to republican form of government.   Cooley
on Const. Lim. (5th ed.) 209; 24 Mich. 88–108; 1 Dill.
Mun. Corp. secs. 8–9; 1 Beach, Pub. Corp. sec. 87; 25
Mich. 153; 28 Mich. 228; 60 Pa. St. 16; 3 Heisk. 698;
51 Ill. 130; 53 Ill. 111; 71 Ill. 318; 81 Ill. 49; 82 Ala.
242; 2 Metc. (Ky.) 350; 65 Mich. 23; 34 Pac. 419; 61
Fed. 436.

Local self-government is the distinguishing feature
between a government by the people and the centralized
government of a monarchy.  Pom. Const., sec. 154.  Local
self-government is an inherent and inalienable political
right of the people.   This act is contrary to the follow-
ing section of our constitution:  "All political power is
inherent in the people, and government is instituted for
their protection and security."  Sec. 1 of the bill of rights.
Sec. 2 of the bill of rights provides, among other things,
that "all men have the inherent and inalienable right to
acquire, possess and protect property."   Sec. 22 pro-
vides:  "The right of property is before and higher
than any constitutional sanction."   42 Ark. 87.

The power to tax is the power to destroy; it is the
power to appropriate the money and labor of the people
taxed.   3 Heisk. 698.   No attribute of sovereignty so
controls the destiny of the people as the power of taxa-
tion.   It is vital to the right of property.   The right of
local self-taxation and the right of property are insepa-
rable—the one cannot exist without the existence of the
other.   How protect property with no control over the
taxing power?  The directors of this corporation are in
no wise responsible to the land-owners, who pay the
taxes.   No person can be safely entrusted with irrespon-
sible power over the property of others.   51 Ill. 130.
The right of local self-government, or self-taxation,
applies to local assessments as well as to general taxa-

tion. 65 Mich. 23; 53 Ill. 111; 2 Metc. (Ky.) 350; 25 Mich. 153; 34 Pac. 419; 61 Fed. 436.

That local self-government is an exercise of the taxing power has been over and over again affirmed, until the matter must be considered closed. Cooley, Tax. 623-624. The rule that legislative authority cannot be delegated applies to local assessments the same as to other taxes. Cooley, Tax. 655. The sovereign power of taxation, conferred on the legislature by the constitution, cannot be delegated to any other agency than the agencies provided in the constitution itself. 82 Ala. 242; Cooley, Tax. 61, 62, 63; 1 Desty, Tax. 254, 470; 2 Lea, 444; 9 Baxt. 398; 1 Blackwell, Tax Titles, 118. Sec. 23, art. 2, constitution, provides: "The general assembly may delegate the taxing powers, with necessary restrictions, to the State's subordinate political and municipal corporations, to the extent of providing for their existence, maintenance and well being, but no further." Sec. 27, art. 19, authorizes the delegation of power to lay local assessments in districts within cities and towns. No other power is given by the constitution to delegate the taxing power to any other agency, and no such power exists. 81 Ill. 49; 3 Kas. 199; 51 Ill. 130; 71 Ill. 318; 6 Cold. 127; 54 Mo. 458; 2 Kas. 115; 34 Pac. 419; 61 Fed. 436; 42 Ark. 159; Cooley, Tax. 690; 2 Desty, Tax. 1236.

This corporation is not one of the State's subordinate municipal or political corporations, and is not situated within a city or town. The power to tax cannot be delegated to such a corporation. 51 Ill. 130; 71 Ill. 318; 82 Ala. 242; 6 Cold. 127; 2 Metc. (Ky.) 350; 12 Neb. 163; 61 Fed. 436; 34 Fed. 419.

All kinds of taxes are provided for and limited by the constitution. Taxation by such a corporation as this has no place in the constitution. Sec. 23, art. 2; sec. 27, art. 19; sec. 4, art. 12; sec. 8, art. 16; sec. 9, art. 16;

sec. 3, art. 14; sec. 5, art. 16; and sec. 5, art. 12 of the constitution. Sec. 25, art. 5, constitution, has this provision, among others: "Nor shall the operation of any general law be suspended by the legislature for the benefit of any particular individual, corporation or association." We have a general levee law. Mansf. Dig. c. 95, and Acts of 1887, p. 132. The complaint alleges, and the demurrer admits, that the general law is suspended by this act. The act is void for this reason. 36 Ark. 166.

The police power is limited by the constitution, the same as other legislative power. If this limitation is not observed, the distinction between a government with limited and unlimited powers is abolished. 123 U. S. 661; Tiedeman, Lim. Police Power, sec. 2; Prentice, Police Power, 267; 70 Ill. 191; 2 Dill. Mun. Corp. 142. All cases agree that compulsory drainage is never justifiable, except when the statute declares it to be for the benefit of the public health. Tiedeman, Lim. Police Power, p. 446; Prentice, Police Power, 57–58. Although a statute may purport to be enacted to protect the public health, if it has in fact no real relation to it, or if it invades the rights of property, or the right of local self-government, it is unconstitutional. 65 Mich. 23; 123 U. S. 661; 98 N. Y. 108; 109 N. Y. 98; 12 Neb. 163; 2 Metc. (Ky.) 350; 26 Fed. 611; 31 Fed. 680.

The conferring of corporate power by special act promotes lobbying, jobbery and corruption in legislation, and confers unequal privileges on citizens. This is prohibited. "The general assembly shall pass no special act conferring corporate powers, except to charitable, educational, penal or reformatory corporations, when the corporations created are to be and remain under patronage and control of the State." Sec. 2, art. 12, constitution. This is a corporation, but is not one of the State's subordinate municipal or political corporations.

The power of taxation cannot be delegated to it. 51 Ill. 130; 82 Ala. 242; 53 Ill. 111; 6 Cold. 127; 2 Met. (Ky.) 350; 12 Neb. 163; 4 Wheat. 518. The powers attempted to be conferred are corporate powers. All the above cases show this to be a full corporation, and a private corporation. The power of taxation cannot be conferred on a private corporation. It is contended that this is a *quasi* corporation, and hence not within the restrictions of sec. 2, art. 12, constitution. But, under our constitution, no corporate power can be conferred by special act, whether upon a *quasi* or a full corporation. 103 U. S. 707; 36 Ark. 166. The case in 42 Ark. 54, has no application to this case. This case was under the constitution of 1868, the same precisely in terms as the constitution of Kansas, and by express terms the prohibition of the conferring of corporate power applied only to stock corporations. But no reference is made to stock corporations in our present constitution. All corporations are within the prohibition, except charitable, educational, penal or reformatory corporations, when the corporations created are to be and remain under the patronage and control of the State. It is contended that, although this is a corporation, the court may disregard the section incorporating it and enforce the act. This would force the court to treat the directors as individuals, and delegate the taxing power to individuals. All acts to be done are corporate acts, and cannot be done by individuals. Strike out the incorporation, and there is nothing left. The rule that a portion of an act may stand, although other portions are unconstitutional, has no application to acts creating corporations. If an act have a double purpose, it may be void as to one and good as to the other; but if the purpose is to accomplish a single object, and some of its provisions are void, the whole of it must fail. Cooley, Const. Lim. 211–212; 21 Ark. 40; 4 Dill.

216.   21 Ark. 60 and 23 Ark. 137 were all under the constitution of 1836.   That constitution had none of the limiting provisions of our present constitution, relied upon by appellants.   96 U. S. 97 arose in Louisiana, under a constitution entirely different from ours.   111 U. S. 701 arose in California, also under a different constitution.   48 Ark. 382 was under a law that required the land owners to elect the levee inspectors.   The assessments were made by the regular assessor, upon the value of the land, and the taxes were levied by the county court.   The act did not attempt to create a corporation.   The present act created a corporation, and authorizes it to appoint its own assessors, and levy the taxes itself.

*John B. Jones* and *H. G. Chambers* for appellants.

*Assessment by benefits* is relied on by appellees to sustain this act.   Cooley, Tax. 640.   But this rule has exceptions, like the one here, where there can be no benefit to the lands assessed.   Here is a tract of land 12 miles square not subject to overflow, and cannot be benefited.   3 Iowa, 82; 35 Mich. 155; 2 Metc. (Ky.) 350; 48 Ark. 382.   21 Ark, 40 and 48 *id.* 370 do not settle this question.   The acts are different.   32 Ark. 31 is the only direct adjudication upon the subject in this State.   The assessment was held void.   The constitution of 1874 absolutely fixed local assessments to be made uniform and on actual value.   Art. 19, sec. 27.   Assessments by benefits never had any footing up to the constitution of 1874.   This constitution did not strengthen it.   It absolutely prohibited such assessments by cities and towns.   There is no other authority in the constitution to make local assessments.   Unless the authority appear in the instrument, no authority exists.   82 Ala. 242; 3 Kas. 199; 2 Desty, Tax. 1236; 1 *id.* 254.   *Peay* v. *Little Rock* has never been overruled. The constitution fixed the rule of uniformity, and there

is no authority for assessment by benefits.    21 Ark. 40 ;
48 Ark. 380 ; 42 *id.* 152.

*J. C. Hawthorne* also for appellants.

The land-owners have no voice or control.    The cor-
poration is neither a political nor a municipal corpora-
tion, and the legislature cannot delegate to it its power
to tax.    The legislature has no power to form corpora-
tions and delegate to them power to tax for local improve-
ments, other than cities and towns.    The enforcement of
the act would deprive plaintiffs of their property with-
out *process of law.*    No special act can be passed con-
ferring corporate powers.    Art. 12, sec. 2, Const.; 15
Oh. St. 21 ; 20 *id.* 18 ; 103 U. S. 707 ; 8 Neb. 178; 36
Ark. 166 ; 2 Dill. 353 ; 32 N. E. 887.    The assess-
ment must be uniform, and the legislature transcend-
ed its power in authorizing an assessment upon bet-
terments, or increased value.    32 Ark. 31 ; Cooley,
Const. Lim. p. 515 ; 48 Ark. 250 and 370.    There is no
conflict between 32 Ark. 31 and 48 *id.* 250.    Art. 19, sec.
27, will not uphold this act ; to do so the court must
ignore both the letter and spirit of the provision.    81
Ill. 49 ; 42 Ark. 157 ; 25 *id.* 289 ; 82 Ala. 242 ; 48 Ark.
251 ; 51 Ill. 111 ; 6 Cold. 127.    An assessment upon bet-
terments is not an *ad valorem* tax, nor a uniform tax.
48 Ark. 251 ; 57 Tex. 635 ; 9 Dana, 513 ; Cooley, Const.
Lim. (3 ed.) 499.    The rule of construction to be placed
upon the language of our constitution should be that the
legislature is *negatively* prohibited from authorizing
local assessments except in cities and towns.    *Neal* v.
*Shinn,* 29 Ark.; 45 Ark. 400 ; 47 *id.* 476 ; 1 Cr. 137 ; 5
Peterson, 248 ; 1 Wall. 243.    If local assessments are to
be made, two conditions *must be* observed.    (1) The
assessment must be based upon the *consent* of a majority
of the property holders.    (2) It must be *ad valorem* and
uniform.    The assessment under this act violates both
of these.    It is flagrant special legislation.    In the ab-

sence of sec. 27, art. 19, there might be room to call on the police power. But this provision limits the power of the legislature. 49 Ark. 199; 57 Miss. 308; Cooley, Const. Lim. 508. The act is unequal and unjust, and no benefit to appellants. 3 Wend. 452; 11 *id.* 149; 8 Am. Rep. 255; 65 Pa. St. 155; 18 N. J. 518; 65 Pa. St. 446; 34 Ill. 203; 62 Ill. 427; 37 N. J. 415; 9 Cush. 233; 40 Wis. 315; 3 N. W. 35; 44 Vt. 174; 7 Cush. 277; 69 N. Y. 506; 64 *id.* 91.

*Balch & Balch* for appellants.

"Assessment" appears only once in our constitution. Art. 19, sec. 27. It nowhere appears in art. 16. A special assessment is a tax. 10 Wis. 242. The provision applies only to cities and towns, and not to counties or districts. 81 Ill. 49; 2 Desty, Tax. sec. 177; 31 Cal. 240. They can only be imposed for improvements clearly conferring special benefits. 70 Me. 527; 11 Neb. 37; 5 Mo. App. 483; 51 Mo. 542; 4 Mo. App. 163; 36 Cal. 104. A local assessment is void when there are no benefits. 65 Pa. St. 148; 69 Pa. St. 353; 12 Ala. 173; 4 Ark. 73. The benefit must be apparent. 45 Conn. 462; 82 Ill. 472; 36 Conn. 255; 3 Wend. 452. Except for the provision in art. 19, sec. 27, const., these assessments can not be sustained, because they violate the rule of equality and uniformity. 2 Desty, Tax. p. 1239. Unless *expressly* authorized, an exercise of the taxing power as to special assessments cannot be upheld. To tax as to supposed benefits is the same as by the front foot. This cannot be done. 30 Mich. 24; 29 N. J. Law, 115. The benefits must be clear, and to the precise extent of the assessment, over and above the benefits to the community in general. 23 Conn. 189. There are no benefits here. The act is against public policy.

*S. R. Cockrill* and *Jas. P. Brown* for appellee.

1. The only question not decided by this court is whether the legislature has power to assess land "ac-

cording to betterments" for local improvements. The levee board is only a *quasi* corporation. The position assumed is that the act is *special*, and violates sec. 2, art. 12 const. The courts are not harmonious. 8 Neb. 178; 103 U. S. 707; 40 N. J. L. 71. In the latter case it was held that a similar provision applied *only to private* corporations. This would have been the construction of our constitution, were it not for sec. 3, art. 12. See 22 Kas. 556. *Quasi* corporations are not embraced in such a provision. 42 Ark. 54; 36 Ark. 177; 52 Ark. 107; 55 *id.* 148, 156, 157; 56 Ark. 365; 48 *id.* 370. In these cases they are not called corporations but "agencies of government" or "agencies of property owners." The leading case is 11 Kas. 23, cited with approval in 42 Ark. 54. See, also, 74 Wis, 620.

2. Assessments for local benefit are not taxes in the strict sense. Cooley, Tax. (2 ed.) 634. The provisions of our constitution in relation to general taxation have no application to special local assessments. 21 Ark. 40; 23 *id.* 137; 44 *id.* 134; 46 *id.* 471; 48 *id.* 370; 49 *id.* 199; 56 *id.* 354–360. There is nothing in sec. 27, art. 19, const., to take local improvements in cities, etc., out of the rule, and 55 Ark. 148 and 42 *id.* 152, construing that provision, affirm the doctrine in 21 Ark. 40. 32 Ark. 31 is not inconsistent with the latter case. See also 13 Ark. 752; 44 Ark. 134; 46 Ark. 471; 33 *id.* 436. Those burdens must be apportioned equally and uniformly. Cooley, Tax. 169; 46 Ark. 471; 48 Ark. 251; *Ib.* 370. Even when referred to the police power, the apportionment must be equal and uniform. 48 Ark. 251; 49 *id.* 199; 147 U. S. 190. But it need not be *ad valorem.* Cases *supra. Davis* v. *Gaines*, 48 Ark. *supra*, re-affirms the rule in *Mathis* v. *McGee*, 21 Ark., and in 56 Ark. 354 the court say: "If there be any conflict between these cases, we approve the latter." *Mathis* v. *McGee* was approved in 147 U. S. 190. But *Peay* v. *Little Rock* is

not now an authority, in so far as it holds that an apportionment by the *front foot* is void.   See 14 N. E. 521–525 ; 27 Pac. 557.

3.   Assessment according to benefits is legal.   Cooley, Tax. 638–9, 660, 620 ; Cooley, Const. Lim. (6 ed.) 613, 614, *n.* 2 ; Cooley, Tax. 620, *n.* 2, 638, 661, 663 ; *Mathis* v. *McGee, supra;* 34 Ill. 203 ; 111 U. S. 701–5.

4.   The act does not delegate the taxing power. The board exercises no legislative powers.   Cooley, Tax. 61–3 ; 55 Ark. 157.   The act itself is the law which imposes the tax ; the board the mere machinery or agency to carry out the regulation.   42 Ark. 152 ; Cooley, Tax. 61–3.   The duties of the board are purely ministerial.   21 Ark. 40.   Boards of improvement in cities, etc., have the same power, and it has been held that the legislature could vest in them this power.   42 Ark. *supra;* 52 *id.* 112 ; 55 *id.* 148.   Every levee act has the same provision, and all have been sustained.   21 Ark. 40 ; 48 Ark. 370.   When the county court acted in levying the taxes, it was merely to register the will of the board, as the city council did in the improvement cases cited.

5.   Sec. 27, art. 19, const., contains no inhibition against county improvement districts.   There is nothing in the suggestion, *Expressio unius, etc.*   The maxim is not favored in the construction of acts of the legislature, and is never applied in the construction of a State constitution.   45 Ark. 400, 408 ; 48 N. W. 818.   The reason is obvious.   The constitution of a State is a *restriction*, and not a *grant* of legislative power.   45 Ark. 400 ; 8 Neb. 124 ; 48 N. W. Rep. *supra* ; 15 Mich. 351 ; 20 *id.* 95 ; *Davis* v. *Gaines*, 48 Ark. *supra.*

6.   The appointing and other powers are not legislative usurpations.   The power to make assessments may be conferred without the assent of the land owners. 47 Cal. 222–3 ; Cooley, Tax. 617, *n.* 2 ; 114 U. S. 612.

.An act *appointing* a board of equalization was upheld. 49 Ark. 522.    See also 52 Ark. 112 ; Cooley, Tax. 640 ; 111 U. S. 701–5 ; 4 Dill. 216 ; 23 Ark. 137, 144 ; 21 Ark. 40 ; 13 Mich. 481 ; Cooley, Const. Lim. 203, *n.* 2.

7.    Property is not taken without due process of law.    The owner can appear and be heard.    Sec. 8. act ; 49 Ark. 522 ; 121 U. S. 500 ; 96 U. S. 104 ; 128 U. S. 581 ; 115 *id.* 335 ; 111 U. S. *supra* ; Cooley, Tax. 51.

8.    The building of levees may be referred to the police power.    49 Ark. 199 ; 4 Dillon, 216 ; Cooley, Const. Lim. 628 ; 732-3 ; 111 U. S. 701 ; 114 *id.* 606, 611; 13 Ark. 752.

9.    If there is a doubt, the act must stand.    52 Ark. 339 ; 47 *id.* 481 ; 49 *id.* 231 ; 45 *id.* 400 ; *Ry.* v. *Leep*, 58 Ark.; 52 *id.* 232 ;  Cooley,  Tax.  695 ;  Cooley, Const. Lim. 204-206, 201.

10.    Allegation that lands in the district are not benefited is bad on demurrer.    21 Ark. 60 ; 78 Ky. 178; Cooley, Tax. 640 ; *Ib.* 661, *n.* 1 ; 14 La. An. 498.

BUNN, C. J.    The appellants filed their bill in the Crittenden circuit court, seeking to enjoin the appellee, the Board of Levee Directors of St. Francis Levee District, from the collection of a tax levied by appellee for the purpose of constructing a levee on the west side of the Mississippi river, within the defined boundaries of the district, and as provided in the act of Feb. 15, 1893, entitled ''An act to lay off and establish that part of the St. Francis basin lying within the State of Arkansas into a levee district, and for protecting and maintaining the same, and to incorporate a board of levee directors for said district and for other purposes.''    There are also amendatory acts—March 21, 1893, and March 29, 1893.   Neither the original act of Feb. 15, 1893, nor the one of March 29, 1893, was signed by the Governor, but went into effect by reason of their having remained with the Governor five days, the general assembly being in

session. In the court below the bill was dismissed on demurrer, and the plaintiff appealed to this court.

The first section of the original act, as amended by the act of March 21, 1893, creates a levee district with definite boundaries, and comprises, as the act says, a part of the St. Francis basin. Within the boundaries are included lands in eight counties. The second section, as amended by the act of March 21, appoints, by name, three citizens of each of the eight counties levee directors for the counties, respectively, and provides that their terms shall be one, two and three years, respectively, in the order in which they are named, and until their successors are appointed and qualified. This section, as amended, further provides: "The directors herein named and their successors in office shall constitute, and are hereby declared to be, a body politic and corporate by the name and style of the Board of Directors of the St. Francis Levee District, and by that name may sue and be sued, plead and be impleaded, and have perpetual succession for the purposes hereinafter designated. They may have a common seal, and may make such by-laws and regulations, from time to time, as they may deem proper, not inconsistent with this charter and the laws of this State, for the purpose of carrying into effect the objects of their incorporation; they may appoint all officers and agents which they may deem necessary and suitable in the conduct of the business of said corporation, and may do all other acts and things, not inconsistent with the laws of this State, which may be proper to carry into effect the provisions and objects of this act." The third section provides that the Governor of the State shall appoint the successors of these directors, and fill vacancies. The fourth section makes it the duty of said board of levee directors to levee the St. Francis front in this State, with further provisions in detail as to the employment of necessary

agents, and to determine the crown, height, slope, grade, etc., of the levee.    The fifth section gives the board of levee directors the power, and makes it their duty, ''to assess and levy, annually, a tax not exceeding 5 per cent. of the increased value or betterment estimated to accrue from the protection given against floods from the Mississippi river by said levee on all lands within said levee district;'' and provides for the call of a meeting of land-owners in the respective counties, at which meeting a proposition to levy said annual assessment shall be submitted to them, and also provides that if a majority of the land-owners are present at said meeting, in person or by proxy, and two-thirds of these shall vote for such assessment, it then becomes the duty of the board of directors to levy the tax.    This section further contains provisions in detail concerning the appointment of election clerks by the directors, the oath to be taken by the clerks, and the making of the returns of the election to the levee board, a canvassing of the vote by the president and treasurer, and a declaration of the result.    It has further provisions with reference to the annual levy of the tax, so long as necessary to effect the object of the act, without any further vote being taken.    The sixth section declares said board of levee directors to be the legal successor of the Levee Board of St. Francis Levee District, and entitled to its books and papers, and provides that said board shall organize by electing a president, secretary, treasurer and chief engineer, prescribe their duties and fix their salaries.    Sections seven to fourteen, inclusive, contain provisions for the appointment, by the board, of assessors and collectors in each county; the duties of such assessors and collectors; fixes the time for annual meeting of the board; duties of the chief engineer; defines the character of lien created by the levy of taxes, and provides for its enforcement in the chancery court of the county where the lands lie; pro-

vides for a penalty to attach upon delinquency, and that at sales for taxes the lands shall be bought in by the levee board, if not otherwise sold; that suits shall be in the name of the St. Francis Levee District, and that the several collectors shall make annual settlement with the treasurer of the board of levee directors. The remaining ten sections of the original act provide for giving notice for the letting of the work; for the receipt of sealed proposals; the contracting; for the giving of a bond by the treasurer; for a *per diem* of $5 to directors while actually engaged; for acquiring right of way, when not gratuitously given; for keeping the levee in repair after it is constructed; for joining with the levee system of the State of Missouri, and for issuing evidences of indebtedness.

The act of March 29, 1893, by its first section, donates to the St. Francis Levee District all lands of the State within its boundaries, except sixteenth sections, and all that the State may acquire therein through forfeitures for taxes within the five years then next ensuing. The second section provides for the sale or mortgage of these lands by the board of levee directors, and execution of deeds by the president in the name of the corporation. The third section exempts the lands so donated from taxation for five years. And the fourth section provides that the district may confirm tax titles, the same as individuals, "providing the president of said levee board shall make a bond to the Governor payable to the State of Arkansas in the sum of $50,000, conditioned upon the faithful and honest appropriation of the aforesaid lands to the building and maintaining of the levee of said district."

There are several cases on appeal to this court against the appellee board, all involving substantially the same questions, and the decision in the one case will apply to all of them.

The constitutionality of the act of the general assembly organizing the St. Francis Levee District, which went into effect by operation of law on the 15th February, 1893, is called in question, and two or more constitutional provisions are alleged by appellants to have been disregarded and violated in the passage of the act. This of itself suggests the very great importance of this litigation, but a brief reference to general principles involved will serve to emphasize the importance of the subject, and may throw light on the real merits of the discussion.

1. As to powers of State government.

The act, if it has any authoritative basis at all, is an expression of the highest governmental power ; and the legislature—the mouthpiece and active force of the State government—has expressed no more in the act than is possessed by the State government. Whatever, therefore, of want of power there is in the act to accomplish the work intended marks also a want of power in the State government. The State government is not one of merely delegated powers, having at every step to account for its actions, and to show its authority for anything it may undertake to do. On the contrary, it is primarily sovereign in character, and all who would question its exercise of power in any direction must affirmatively show that it is restricted expressly or by necessary implication in its own or the national constitution. Hence it is that every doubt arising in controversies of this kind must be resolved in favor of the legislative enactment. Ex parte *Reynolds*, 52 Ark. 339 ;. *Wilkins* v. *State*, 16 N. E. 193 ; *Hedderich* v. *State*, 101 Ind. 564 ; Cooley, Const. Lim. (5 ed.) secs. 197, 201 ;. *Neal* v. *Shinn*, 49 Ark. 231 ; *Vance* v. *Austell*, 45 *Ib.* 400 ; *Leep* v. *Ry. Co.* 58 Ark. 407 ; *Penn. Ry. Co.* v. *Riblet*, 66 Pa. St. 164–169 ; *Commonwealth* v. *Moore*, 25 Grat. 951.

The contention of appellants that this act of the legislative department is in violation of the spirit of the constitution of our free government—is subversive of the right of local self-government, the great boast of all the Anglo-Saxon race—does honor to the head and heart of their learned counsel, who so eloquently present this phase of the question.   The doctrine of local self-government must ever remain the political faith of every free people, and the expression of that sentiment should ever be a potent sound in every legislative hall.   But this is dangerous ground for the courts to get upon. What may be local self-government, what may be inimical to it in any case, and what may be the best method of preserving so precious a boon, are questions about which its votaries most widely differ among themselves, and questions for the determination of which, in our weakness, we have never been able to create an impartial arbiter.   The same may be said, negatively, of the oft recounted wrong of "taxation without representation."   The entertainment of these sentiments, as we have said, is honorable to the heart, and the manner in which they are expressed is creditable to the head, of the counsel, but further than this we ought not to go. *Our* inquiry is not as to what ought to be, but rather as to what is—yea, more, as to what is *written* as—the law. *Gosnell* v. *State,* 52 Ark. 232 ; *Hedderich* v. *State,* 101 Ind. 564 ; *Commonwealth* v. *McCloskey,* 2 Rawle, 373 ; *Chicago, etc. Ry. Co.* v. *Smith,* 62 Ill. 268 ; *Martin* v. *Dix,* 52 Miss. 53 ; Cooley, Const. Lim. (6 ed.) p. 200 *et seq.*

One of the contentions of appellants is that the act under consideration is a local or special act, and that a general law would be equally as available to accomplish the end in view ; and therefore that the legislature, in passing this act, disobeyed the mandate of the constitu-

2. Discretion of legislature as to special legislation.

tion, as expressed in article 5, section 24.    The object of the act is undoubtedly a local work in the first instance, and for this reason we may concede that the act itself is a local or special one.    This court (and its decisions are supported by the decision of every other court having under consideration the same question, so far as we know) has held that the legislature is the exclusive judge in determining when a general law will not subserve the purpose as well as a special act.    There is a line of decision which modifies this statement, to the effect that the legislature *has a sound discretion* to determine such a question.    None, we believe, go further, however, towards rendering legislative determination questionable in cases like this.    *Boyd* v. *Bryant*, 35 Ark. 73 ; *Davis* v. *Gaines*, 48 Ark. 384 ; and authorities in the two cases cited.

3. Authority of legislature to delegate the taxing power.    It is contended that the legislature cannot delegate the taxing power to any but counties, cities and towns —its subordinate political and municipal corporations— since the authority to delegate the power is restricted to these by section 23, article 2, of the constitution.

It will be seen at a glance, however, that this section contains no prohibitory expressions whatever.    The delegation of the taxing power was not, as will be readily seen, the main object of the section, for the delegation of this power to these corporations had grown to be such a matter of course, and withal was such a conceded right in all government, that the expression in the section was a mere recital of the pre-existing right made in order to give a more noticeable meaning to the restrictions that close the section—the tax limitation.

Nor can the reference to delegation of the taxing power in that section be tortured into an unnatural meaning by coupling it with sec. 27, art. 19, of the constitution.    This last section is connected with no particular preceding section of the constitution ; for, as its lan-

guage shows, it gives authority to the legislature to provide for assessments for local improvements in cities and towns, notwithstanding anything else in the constitution which might otherwise be construed against such a right.   We cannot see that the case cited (*Little Rock v. Improvement Dist.* 42 Ark. 152) supports the contention, because, if we regard the latter section as intended solely to qualify the former, the meaning would be, in effect, as follows: Taxation by cities and towns may be to the extent of their maintenance and well being, and no further, but nevertheless, beyond this limitation, the legislature may authorize assessments for local improvements within their territories.

We do not see how the State's inherent right of taxing and delegating the taxing power for public purposes is affected by anything said in these sections, otherwise than as pertains to the affairs of cities and towns and their inhabitants.

But the assessments upon real estate for local improvements has no connection whatever with the general taxing power mentioned, defined and limited in the constitution, and this has been so well settled as really to require no citation of authorities, much less argument. Sufficient is it, at all events, to quote from Cooley on Taxation (2 ed.), page 636: "It is safe to assume, as the result of the cases, that the constitutional provisions refer solely to State taxation, or when they go further, to the general taxation for State, county and municipal purposes; and though assessments are laid under the taxing power, and are, in a certain sense, taxes; yet, that they are a peculiar class of taxes, and not within the meaning of that term as it is usually employed in our constitution and statutes.   They may therefore be laid on property specially benefited, notwithstanding such constitutional restrictions as have been mentioned."

We shall not devote much time nor space to the discussion of the power of the State government to provide for public works, in general, nor of the kind contemplated in the act under consideration, in particular. The leveeing of the western bank of the Mississippi river, to prevent the periodical inundation of the lands included in the district, is undoubtedly a local improvement, having for its object, primarily, the reclamation and enhancement of the value of the lands included therein, and, secondarily and consequently, to add to the prosperity, welfare, comfort, convenience and wealth of the whole State. True, the State does not recite in the statute the objects of the work, in so far as it affects the public, but the legislative department is not such an inferior tribunal as that its acts must necessarily show their object on their face. The presumption will be indulged that the legislature has in every case a proper object in view. Whether it acts under the right of eminent domain, or under the police power, all agree that, unless restrained by express constitutional restrictions, the legislature has full power in the premises. Perhaps it is safe to say that when the taking of private property for the location of the necessary levees, ditches and drains becomes necessary, the right of eminent domain will be asserted. On the other hand, the work and its costs, within the scope of the benefits, will be attributable to the police power. For a discussion of this matter, and particularly for an able discussion of the nature and application of the police power, we refer to the case of *Donnelly* v. *Decker*, 58 Wis. 461, which has become a leading case on the subject. Public works of the kind have been very generally considered as coming within the scope of legislative power. *Mayor of Baltimore* v. *State*, 74 Am. Dec. 572, note 590–595; *Munn* v. *Illinois*, 94 U. S. 113; *Williams* v. *Mayor*, 2 Mich. 567; *Egyptian Levee Co.* v. *Hardin*, 27 Mo. 495; *Hagar* v. *Reclamation*

*District*, 111 U. S. 701, 704; *Wurts* v. *Hoagland*, 114 U.
S. 606, 611; *Draining Company's Case*, 11 La. An. 338;
*Anderson* v. *Kerns Draining Co.* 14 Ind. 199; Cooley,
Const. Lim. (6 ed.) 627, 633.

The most important question in this case, and the
one most difficult of solution, is that raised by the con-
tention that the legislature, in conferring corporate pow-
ers upon the appellees, disregarded the inhibition of
section 2, article 12, of the constitution. The particular
contention is that the inhibition is against conferring
corporate powers by special act on public as well as pri-
vate corporate bodies.

4. As to con-
ferring corpo-
rate powers by
special act.

We will not enter upon a construction of that sec-
tion, to show to the contrary, since, from our view of
the case, it makes little difference whether the section
has reference solely to private corporations (as we think
is the case), or to both private and public corporations,
since, in the latter case, what would be denominated
"public corporations" might only be public *quasi* cor-
porations, at best. In fact, we are inclined to think that,
under the latest and best rule of construction, acts of
the legislature conferring corporate powers upon mere
State agencies—bodies of citizens who have no personal
or private interests to be subserved, but are simply re-
quired by the State to do some public work—are not acts
conferring corporate powers, such as are referred to in
the constitution.

The principle of construction here referred to is
most frequently illustrated in the instances of counties,
townships, school districts and the like. Counties are
ordinarily created corporate bodies, in a sense, and yet
their corporate powers, in each instance, are necessarily
conferred by special acts. They are therefore no longer
considered as falling within the inhibitory clause of the
constitution. And, if this is necessarily the case with
counties, why not with any other agency the State gov-

ernment may choose to employ in the matters of civil government? The object of the restriction was, evidently, the apprehended abuse of the power conferred. This was the reason of the constitutional restriction. The reason does not exist where the State merely clothes one of its own agencies or instrumentalities with such power. This subject is ably and forcibly presented in *Beach* v. *Leahy*, 11 Kas. 23, which was a case wherein the legislature, by special enactment, conferred certain corporate powers upon a school district. The constitution of that State contained the same provision as ours against conferring corporate power by special acts, without, however, the exception in favor of educational, charitable, and penal or reformatory institutions. Judge Brewer, in delivering the opinion of the court, said: "Does it (the act) conflict with sec. 1 of art. 12? The question here raised is one of more difficulty. * * * Sec. 24 of ch. 92 of the Gen. Stat. provides that 'every school district organized in pursuance of this act shall be a *body corporate*, and shall possess the usual powers of a corporation for public purposes.' The act under discussion is a special act conferring powers upon this body corporate which it did not possess before. It seems, therefore, to conflict with the letter of this section. A critical examination however leads us to the conclusion that this conflict is seeming and not real, or, perhaps more correctly, leaves our minds so doubtful of the existence of any conflict that, according to well settled rules of construction and decision, we must pronounce the law not unconstitutional." The court, in that case, held that school districts are merely *quasi* corporations, because "they are primarily political subdivisions; agencies in the administration of civil government; and their corporate functions are granted to them the more readily to perform their public duties. The legislature have created the regents of the agricultural college, and

the regents of the State university, bodies corporate, and given them certain corporate powers ; yet, are they thereby inhibited from special legislation concerning them? Giving corporate capacity to certain agencies in the administration of civil government is not the creation of such an organization as was sought to be protected (prohibited) by article 12 of the constitution." Continuing, he said : "The mere fact that these organizations (*quasi* corporations) are declared in the statute to be bodies corporate has little weight. We look behind the name for the thing named. Its character, its relations, and its functions, determine its position, and not the mere title under which it passes." To the same effect is the case of *State* v. *Stewart*, 74 Wis. 620. The principles announced in these decisions, and the numerous authorities cited therein for their support, meet our views on the subject; and the main doctrine therein announced, to the effect that conferring corporate powers by the legislature upon agencies of the State, appointed to perform some public work, in the course of the administration of civil government, in order to the more efficient performance of the duties imposed, is not such an act as is prohibited by the constitution, we think, is founded upon sound reason as well as authority.

Applying the principle to the case at bar, we think the conferring of corporate power by special act upon the Board of Directors of the St. Francis Levee District is not in violation of the constitution.

It is contended that the act in question authorizes the taking of property without due process of law. The 8th section of the act requires the assessors to make their assessments between the first Monday in April and the first Tuesday in May of each year; that they shall hold a meeting at the office of the levee board (as provided in section 9) on the second Tuesday in May next after completing their assessments, and then organize

5. As to due process of law in making assessments.

and equalize their assessments ; and when this is done, the result shall be the assessment for that year.  No special mention is made of contests before either of the boards, or appeals from their decision on the matter of assessment.  This fixing of time and place is probably meant to furnish an occasion for the hearing of complaints, etc.  The eleventh section provides for suits of foreclosure to collect the taxes levied, and this provision seems to be as full as provisions of the kind usually are in such cases.  To our minds, the language of section 8 might have been more specific in regard to the opportunity and manner of making complaints against the assessments, before one or both of these boards, and the minds of those interested might have been freed from all doubt on the subject; but defects of the kind are largely, if not altogether, for the consideration of the legislature ; and it may be that they become the less worthy of note, in view of the full opportunity to be heard, as provided in section 11 of the act.  Such seems to be the conclusion of the authorities.  *Davidson* v. *New Orleans*, 96 U. S. 104.

6. Liability of land to assessment.    It is contended that appellants' lands will not be benefited by the proposed levee.  This is, ordinarily at least, a question which the legislature has the power to determine, either directly or through its own instrumentality.  The question whether any particular tract of land should or should not be included in the list to be burdened with the assessment is not one, in this instance, of absolute or entire inclusion or exclusion, but the solution of it is on the rule of proportion.  By provision of this act, the lands in the district are to be assessed according to their real present value, and then according to what they will be really worth after the improvement shall have been completed, and its beneficial effects have been realized ; and the difference between these two, is to be the valuation upon which the assessment is to be

made. It follows that the value of the benefits is the true basis of the assessment. This being the case, no question as to whether any particular land is now subject to overflow or not is the real question to be solved. A tract within the district may be above overflow without the levee, and yet, in various ways, greatly benefited by the levee. Under the method set forth in the act, if there is no difference between the present value of a tract and the value it is estimated it will have when the levee shall have been made, then there will be no assessment on that tract; and if the difference is small, the assessment will be proportionately small, and so on until the tract which is to receive the greatest benefit is involved, and its assessment will be the highest.

From this statement, it naturally occurs that the issue raised by the pleadings in this case, in this connection, is not one the court can take hold of, and therefore must be determined in favor of the demurrer. The *amount* of the estimated benefits is the sole subject of contest, and when and how this contest should be made is apparent. *McDermott* v. *Mathis*, 21 Ark. 60 ; Cooley, Tax. (2 ed.) pp. 660–4.

There are other questions raised, but they are of minor importance, and, besides, what we have said on the questions herein discussed renders it unnecessary to discuss these minor ones. There may be defects in the act, as there may be in the judgment of those appointed to give effect to the act, but these are not questions addressed to us.

The decree of the court below is therefore affirmed, with costs.

Battle and Hughes, JJ., concur.

N. W. NORTON, Special Judge (dissenting). The only question presented is the validity of this legislation. All cases involving the constitutionality of legislative

action are important, and to be proceeded with in great caution, even when, in a pecuniary way, there is but little at stake.    Here our caution is invoked as well by the magnitude of the undertaking—the construction of a levee against the waters of the Mississippi river through a fund to be raised from lands lying in eight counties of this State.    Its cost, it is said, is to be counted in millions; and its erection appears to be a matter of exciting interest to the owners of lands to be affected—many favoring and many opposing the scheme.

This court has nothing to do with the wisdom or feasibility of the plan, nor can we look into the reasonableness of its provisions.    If they are unreasonable, harsh or improvident, they must yet stand; and all of these are questions for the consideration of the legislature, and not for the courts.    Unless the acts in question infringe upon some express or implied provision of the constitution, they must stand, even though they be unjust.    Every presumption is to be indulged in their favor.    If of doubtful validity, they must be upheld.    If the provisions are separable, and some are good, some doubtful and some bad, the good and doubtful parts must be upheld, and the bad held void.

Among many other objections urged by appellants, the point is made that the legislation is in violation of sec. 2 of art. 12 of the constitution.    That section is as follows :    "The general assembly shall pass no special act conferring corporate powers, except for charitable, educational, penal, or reformatory purposes, where the corporations created are to be and remain under the patronage and control of the State."

It is conceded that the acts are special acts, and that, in terms, corporate powers are created thereby.    In avoidance of the effect that apparently should follow, counsel for appellee contend:    (1) that only a *quasi* corporation was created; (2) that if a corporation was

created, "the 'body politic and corporate' feature may
be entirely eliminated, and the act remain, as does the
levee act of March 20, 1883, establishing a system for
protecting the lands of Chicot county, which act, in
*Davis* v. *Gaines*, 48 Ark. 370, successfully stood the test
applied by this court." The case of *McGehee* v. *Mathis*,
21 Ark. 40, is also cited and relied on by counsel for
appellee. In it levee legislation was upheld.

We will first consider to what extent the case at
bar is controlled by these two decisions of this court.

The act of March 20, 1883, involved in *Davis* v.
*Gaines*, provides that the county court shall examine
and compare the returns of elections for levee inspec-
tors ; that the county court shall levy the levee tax in
much the same manner that it levies the taxes of school
districts and incorporated towns. It contemplates the use
of the assessments made for State and county purposes
by the county assessors ; provides that the levee tax
shall be placed on the tax books and collected as other
taxes by the county collector, and by him paid over to
the treasurer of the levee board ; and also makes the
clerk of the circuit court ex-officio clerk of the board of
inspectors.

The act involved in *McGehee* v. *Mathis*, judging
from the opinion, was much the same, except that under
it the annual levee tax was to be fixed by the county
court. From these it may be taken as established that
levees may be built through the machinery of county
organizations, in conjunction with a board of levee in-
spectors possessed of much power and discretion. As
counties are not "corporations" in the sense the word is
used in art. 12, Const. '74 (as held in *Pulaski County* v.
*Reeve*, 42 Ark. 54), it follows that the constitutional in-
hibition against the conferring of corporate powers by
special act is not violated by a legislative imposition of
new duties and powers upon county organizations, and

if, in the exercise of these new duties and powers, the county organization is called to act in conjunction with a board in itself obnoxious to no constitutional provision, it is obvious that the two, taken together, would possess no constitutional infirmity.

If there was contention in *McGehee* v. *Mathis* and *Davis* v. *Gaines* that the board of inspectors was not constitutionally formed, the findings were in favor of its validity.   Manifestly, however, considerations multiply in proportion as the powers and duties of the levee board are increased through an abandonment of the county organizations, which, as we have seen, could be constitutionally empowered to perform many of them.

We have here to consider a board of levee directors, disconnected with all county organizations, intended to be self-sufficient and independent, and possessed of full corporate powers expressly conferred.   Necessarily, its foundation must undergo an examination it would not be called on to bear, had it the limitations of its predecessors.

It becomes necessary for us to determine whether the body created by this legislation is a corporation or a *quasi* corporation.

In *Levy Court* v. *Coroner*, 2 Wall. 507, the Supreme Court of the United States held the levy court to be a *quasi* corporation, saying:   "Its functions are those which, in the several States, are performed by 'county commissioners,' 'overseers of the poor,' 'county supervisors,' and similar bodies with other designations.   *  *  *  *   If not a corporation, in the full sense of the term, it is a *quasi* corporation, and can sue and be sued, in regard to any matter in which, by law, it has rights to be enforced, or is under obligations which it refuses to fulfill.   This principle, a necessary one in the enlarged sphere of usefulness which such bodies are made to perform in modern times, is well supported by adjudged

cases." In *School District* v. *Insurance Co.* 103 U. S. 707, the court say: "What is meant by the words '*quasi* corporation,' as used in the authorities, is not always. very clear. It is a phrase generally applied to a body which exercises certain functions of a corporate character, but which has not been created a corporation by any statute, general or special." In a note to *Todd* v. *Birdsall,* 13 Am. Dec. 523, it is said of *quasi* corporations: " It seems therefore to be a distinctive characteristic of this class of corporations that their powers and privileges are not derived from an express charter or articles of incorporations." In *Angell* v. *Ames, Corp.* (10 ed.), sec. 23, it is said: "Both towns and other political divisions, as counties, hundreds, etc., which are established without an express charter of incorporation, are denominated *quasi* corporations." In 1 Morawetz, Corp. sec. 6, it is said: "Associations and government. institutions, possessing only a portion of the attributes which distinguish ordinary private or public corporations, have sometimes been denominated *quasi* corpora-- tions." In 1 Dillon, Mun. Corp. sec. 22, it is said: "Corporations intended to assist in the conduct of local civil government are sometimes styled *political*, some-- times *public*, sometimes *civil* and sometimes *municipal*, and certain kinds of them, with very restricted, powers. *quasi* corporations." In 1 Spelling, Corp. sec. 20, it is. said: "Often in the administration of governmental affairs, and sometimes in the transaction of business of a public nature, it becomes necessary for men to organize themselves into permanent collective bodies. Upon some of these the law has conferred rights and powers very like those enjoyed and exercised by corporations; and. to that extent, and no farther, they are corporations. To distinguish these from those regularly constituted and clothed with complete corporate authority, they are termed *quasi* corporations." In 1 Beach on Public Cor--

porations, sec. 3, it is said: "Public corporations, then, using the term in the limited sense in which it is used in the text-books and cases, are subdivided into municipal and public *quasi* corporations. Municipal corporations embrace incorporated cities, villages and towns, which are full-fledged corporations, with all the powers, duties and liabilities incident to such a status; while public *quasi* corporations possess only a portion of the powers, duties and liabilities of corporations. As instances of the latter class may be mentioned counties, hundreds, townships, overseers of the poor, town supervisors, school districts and road districts. It must be borne in mind that public *quasi* corporations and *quasi* public corporations are entirely distinct classes; the former being represented, as we have said, by townships, counties, and such governmental subdivisions of the State, the latter being represented by corporations the property of which is devoted to a use in which the public has an interest, such as railroads, grain elevators, telegraph companies and similar corporations." The term *quasi* corporation may also properly be used in some instances in connection with private associations. In Spelling on Private Corporations, sec. 23, it is said: "Joint stock companies may be cited as *quasi* corporations of a private character. They have some of the features of a co-partnership, and others of a private corporation.

From these authorities we conclude: (1) That a *quasi* corporation is something less than a corporation. (2) That the absence of a charter, conferred either by general or special act, is the criterion for determining that a given collective body is only a *quasi* corporation. (3) That a *quasi* corporation is an unincorporated collective body, having public functions to perform, and which the courts, from necessity, have been compelled to treat like a corporation, to the end that its duties might be discharged, and the purpose of its existence carried

out.   (4) That where a corporation is expressly created by statute, and given full corporate powers, it cannot be treated as a *quasi* corporation, but must stand as a corporation, either public or private.

The public character of a corporation can never be allowed to reduce it to the grade of a *quasi* corporation. To so hold would put an end to public corporations; and we would have only private corporations and *quasi* corporations. It is the presence or absence of corporate power and authority that enables us to determine whether or not a given body is a corporation or only a *quasi* corporation, and not the character of work the body is to perform.

Against this view of the law, the case of *Beach* v. *Leahy*, 11 Kas. 23, is pressed upon our attention. It was there held that a school district was only a *quasi* corporation, although declared by the statute to be a body corporate. The decisions upon which the ruling is grounded are cases where it was held that incorporated towns were not liable for accidents caused by defective streets, sidewalks, etc. It strikes us that non-liability for such accidents is no test, when the question is whether or not a given corporation created by special act is within or without the constitutional inhibition. We also think the opinion overlooks the evident truth that bodies which are as a rule only *quasi* corporations may at any time have full corporate powers conferred upon them, after which it would be manifestly wrong to continue to call them *quasi* corporations. School districts very generally appear in an enumeration of *quasi* corporations. But they anywhere could be complete corporations. It is doubtful if this court, in a case involving a school district, could follow *Beach* v. *Leahy*. The statute makes them corporations (Mansf. Dig. secs. 6172–3), and in *Davis* v. *Gaines*, 48 Ark. 370, this court, in passing on the levee board then being considered, said it is not a

corporation, "as a school district is." But, be all this as it may, the weight of authority is against *Beach* v. *Leahy*. *Board of Com'rs* v. *Brockman*, 35 N. E. 887; *State* v. *Cincinnati*, 20 Ohio St. 18; *State* v. *Cincinnati*, 23 Ohio St. 455; *State* v. *Pugh*, 43 Ohio St. 98; *Clegg* v. *School District*, 8 Neb. 108; *School District* v. *Insurance Co.* 103 U. S. 707.

The case of *State* v. *Stewart*, 74 Wis. 620, is also cited as closely in point. It seems the act there involved did not in terms create a corporation. We find this clause in the opinion: "They (the drainage commissioners) exercise many powers of regular corporate bodies, and the act seems to constitute the drainage commissioners a corporation to accomplish and carry out the work of the proposed system of drainage." Another clause is: "The main object of this clause of the amendment may have been to prohibit the legislature from granting corporate powers and privileges to private corporations, except by general law; but we are not prepared to say that this was the only object of the clause." The court, in the language just quoted, declined to construe the constitution; and, as the legislation was upheld, the true ground of the ruling must be taken to have been that the court considered the body only a *quasi* corporation. It is plain that, had a corporation been created, there would have been no way to dispose of the case, and at the same time avoid a construction of the constitution. In our opinion the case does not affect the case at bar.

Three other points in argument remain to be disposed of: (1) That the legislation may be referred to the police power, and in that way upheld; (2) that the levee board is only an instrumentality of the State in the prosecution of a great public work; and (3) that the body politic and corporate feature may be stricken out, and the remainder of the acts be allowed to stand, and the work be prosecuted under their provisions.

Of the first we will only say that, in our opinion, it is in the exercise of the police power that all corporations are created.

Of the second—that the levee board is only an instrumentality or State agency in the prosecution of a great public work—we say, thus defined and characterized, it is placed squarely within the mischief intended to be prevented by the constitution, as well as within the letter of the inhibition.   The makers of the constitution foresaw that legislatures to come might want to prosecute some public work through the instrumentality of a corporation created by special act, and, with four exceptions for educational, penal, reformatory and charitable purposes, they provided it should not be done.   It is beyond our power to add "levees," and make the fifth exception.

We are next urged to the view that the section declaring the board to be a body politic and corporate may be stricken out, and the remainder—the working part of the act—be allowed to stand.   If one unlawfully created corporation could be saved in this way, so could the next and all subsequent ones.   It would stand admitted, sooner or later, that the thing really stricken out by the ruling was the inhibitory section of the constitution.   With such a precedent, the legislature need feel no hesitation thereafter in creating corporations by special act.

Judge Brewer, in *Beach* v. *Leahy*, said he would look behind the statutory declaration that a school district was a corporation, and see whether it was or not. The principle is undoubtedly correct—a court should look at the thing named.   There is nothing in a name. But it is equally true that there is nothing in the absence of a name; and should we, by striking out the section indicated, deprive this levee board of its cor-

porate name, there would be no way to escape the conclusion that a body with full corporate powers remained.

We are met with the suggestion that to hold this legislation void is to do so upon a technicality. We cannot agree to this. All admit the vices of special legislation, and the people of this State, in the organization of the present government, stipulated that no corporations should be placed over them, except such as should be created under general laws. It is well known that special acts are passed with slight consideration. Those who want them are, in character, petitioners, and the other members of the general assembly give them practically no consideration, having no interest in opposing them, or in seeing that they are provided with proper restrictions. The constitution contains all that could be said to prevent the creation of corporations in this vicious way. We see it possible to be remarked that a *quasi* corporation created by special act might be as oppressive as a corporation so created. This would rarely be true, because of the greater powers that corporations have; but if it were entirely true, the fact would remain that the creation of corporations by special act is inhibited, and the creation of the inferior collective body is not. That the constitution is not broad enough to give protection against both is no reason why it should be denied application to complete corporations, such as we find the one to be that is under consideration. It is said, in the opinion of the majority in this cause, that the members of the general assembly are the judges of the propriety of the enactment of special laws, and of the applicability of general laws. This is true, according to the weight of authority, whether correct in principle or not. But it seems safe to say that the doctrine has never before been extended to the creation of corporations by special act. The creation of a corporation is not the enactment of a law, in the sense of the provision that "in all cases

where a general law can be made applicable, no special law shall be enacted." (Const. 1874, art. 5, sec. 25).

The right of the State to levee the Mississippi river, whether under the police power or some other power, is not assailed by the appellants, and needs no defending. We take it to be conceded that the State has the power. The instrumentality through which the work is to be prosecuted alone is attacked. The right to levee the river does not carry with it the right to do it through a forbidden agency. The appellants have a right, under the constitution, to say that, if it must be done by a corporation, it must be a corporation formed under a law for the existence of which every member of the general assembly enacting it would be under accountability to his constituents, because of its general terms.

The constitution was, by the statesmen and people of that date, made as they wanted it, for us to enforce as we find it, in affairs large and small. The principles upon which this government should proceed are there recorded. They are the highest law and invaluable—yet worthless if denied application.

As we view the legislation being considered, we have no doubt of its being in violation of both the letter and spirit of our constitution, in so far as it looks to the prosecution of the work through the instrumentality of the corporation created. Some parts we would uphold, but, as all are upheld by the majority opinion, we omit the useless task of separation.

Justice Wood concurs with me in this opinion.