CRAIG v. RUSSELLVILLE WATERWORKS IMPROVEMENT DISTRICT.

Opinion delivered October 21, 1907.

MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—CONSENT OF LANDOWN-
ERS.—The act of February 18, 1907, providing for the creation of an improvement district to be a charge upon the real property of the city of Russellville, is unconstitutional in not providing that a majority in value of the owners of real property within the district shall consent to the improvement, as required by Const. 1874, art. 19, § 27.

Appeal from Pope Chancery Court; *Jordan Sellers*, Special Chancellor; reversed.

*Ratcliffe & Fletcher*, for appellant.

1. The act, if valid, suspends the operation of the general law in reference to the city of Russellville, and leaves it without power to establish other improvement districts of the whole or any part of the territory. It is in violation of art. 12, § 3, Const. The Legislature has no power to control the affairs of cities and towns except through general laws. 36 Ark. 166. As illustrating the difference between the power of the Legisla-

ture over counties, townships, etc., and over cities and towns, compare the case last cited with 33 Ark. 497.

2. The act is in violation of art. 19, § 27, Const. Ark.; 72 Ark. 195; 42 Ark. 87; 187 U. S. 58.

3. It is in conflict with art. 5, § 24, forbidding the suspension of any general law for the benefit of "any particular individual, corporation or association," and also conflicts with art. 12, § 2, Const., forbidding the passage of any special act conferring corporate powers, etc.   36 Ark. 166; 67 Ark. 35; 4 Kan. 114; 3 Hill, 538; 28 Mich. 228.

4. Constitutional rights of individuals are involved here, and no presumption will be indulged that the Legislature has done its duty as in other special statutes before the enactment of which the Constitution requires that notice be given.   42 Ark. 87; 36 Ark. 175.

*Brooks, Hays & Martin,* for appellee; *R. B. Wilson* and *J. T. Bullock,* of counsel.

1. Article 12, § 3, Constitution, refers to cities and towns only, and has no reference to improvement district. This being a suit by an improvement district, the city, as such, has no interest in it. An improvement district is not a municipality nor the agent of one.   55 Ark. 148; 69 Ark. 284.

2. Unless the Constitution in plain terms or by necessary implication prohibits the passage of the act, it is valid.   72 Ark. 126; 164 U. S. 176; 21 Ark. 40; 59 Ark. 528; 170 U. S. 55; 58 Ark. 384. Presumptions are in favor of the regularity of legislative enactments.   52 Ark. 339; 16 N. E. 193; 101 Ind. 564 Cooley, Const. Lim. (5 Ed.), § § 197, 201; 49 Ark. 231; 45 Ark. 400; 58 Ark. 407; 76 Ark. 200; 75 Ark. 120. Where one construction of a statute would render it void for conflict with the Constitution, and another would render it valid, the latter construction will be adopted.   36 Ark. 576; 69 Ark. 376.

HILL, C. J.   The General Assembly passed an act, which was approved on the 18th day of February, 1907, entitled, "An act to create an Improvement District, composed of all the real estate within the corporate limits of the City of Russellville, Arkansas, and for the purpose of providing, constructing and maintaining a system of water works there and for other pur-

poses." This act declared that "all the real estate within the corporate limits of the city of Russellville, Pope County, be and the same is hereby created into an improvement district, for the purpose, under the name and with the powers hereinafter specified." In brief, it was to provide for the construction, building, establishment and maintaining for the city of Russellville of a system of water works, and giving complete authority and power to construct the improvement and charge its cost upon the realty of the district. The business and affairs of the district were to be carried on by a board of public improvement which was named in the said act, vacancies to be filled by the city council. The act provides for the construction and maintenance of an improvement substantially as if an improvement district had been created under sections 5664-5742 of Kirby's Digest; except that there is no provision in this act providing for a majority in value of the owners of real property within the district consenting to the improvement being made, as is provided in section 5667 of the general law on the subject, as a condition precedent to the construction of the improvement.

This is a suit to charge the real estate of a property owner in said district with the assessment levied pursuant to said act, and to sell his real property, or so much thereof as may be necessary, to pay the assessment and cost of suit. The district prevailed in the chancery court, and the property owner has appealed.

Passing other questions presented by the appellant, this one is preeminent: Has the General Assembly power to create improvement districts in cities and towns, and authorize them to erect public improvements by taxation on real estate, without providing by law that the contemplated improvement shall only be made when the consent of a majority in value of the property owners adjoining the locality to be affected is obtained?

Section 27 of art. 19 of the Constitution is as follows:

"Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders own-

ing property adjoining the locality to be affected; but such assessments shall be made *ad valorem* and uniform."

This section is found in the miscellaneous provisions, and is connected ·with no preceding section. It is inserted to prevent misapprehension and remove doubt as to the power of the General Assembly to authorize assessments in towns and cities for the purpose of local improvements. *Carson* v. *St. Francis Levee District,* 59 Ark. 513; *Little Rock* v. *Board of Improvements,* 42 Ark. 152. The many restrictions on the power of the Legislature in regard to cities and towns may well have raised doubt as to this power; and the framers of the Constitution, after removing this doubt, then provided that the power should only be exercised within the limits therein mentioned, namely, such assessments must be based on the consent of the majority in value of the property owners owning property adjoining the locality to be affected, and the assessments to be *ad valorem* and uniform. This restriction only reaches to local improvements in cities and towns, and leaves the General Assembly free to exercise its sovereign will in this respect elsewhere in the State. The power to create districts for local improvements and to provide a method for taxation therein, and the breadth of that power, and the narrow scope of judicial inquiry into it, have been considered by this court in recent cases. *Carson* v. *St. Francis Levee District,* 59 Ark. 513; *St. Louis S. W. Ry. Co.* v. *Red River Levee District,* 81 Ark. 562; *Coffman* v. *Drainage Dist.,* 83 Ark. 54; *Sudberry* v. *Graves,* 83 Ark. 344.

But this is the first case which presents the exercise of this power when fettered by the constitutional limitation above quoted. The origin of these limitations upon the lawmaking power was discussed in *Crane* v. *Siloam Springs,* 67 Ark. 30. It is therein shown that this requirement for the consent of a majority in local government is a part of the heritage of the Anglo-Saxon, which has, in various forms, been imbedded in the constitutions of the different States. Mr. Justice RIDDICK, speaking for the court, said:

"The framers of that instrument by this section, which expressly recognizes the power of the Legislature to authorize assessments on real property in towns and cities, but limits them to

local improvements, and requires that they should be made only on property adjoining the locality affected, and be based upon the consent of a majority in value of the owners of such property, did not intend arbitrarily to forbid an assessment for an improvement specially benefiting the real property of the entire city, or to prevent an equitable apportionment of the tax in such case. They had, as we think, a broader purpose in view. Their object was to limit such local assessments to proper local purposes, to undertakings intended mainly for the accommodation and convenience of the inhabitants of the city or of the district upon which the tax was laid. They attempted, by the limitations imposed, to prevent unjust apportionments, to keep property from being burdened with assessments without corresponding benefit. They endeavored, as far as practicable, to protect the honest and prudent property owner against those unscrupulous persons who seek to make a private gain by the expenditure of public funds, and also against the equally dangerous class that, swayed by their imagination, see fortunes in all sorts of undertakings, and clamor for extravagant assessments and appropriations with a view to advantages which, except the expenditure they entail, often prove as evanescent as a mirage on a desert." ·

Clearly, this act is in violation of this prohibition of the Constitution, in spirit as well as in letter; and the only real question can be whether the prohibition is one which addresses itself solely to the legislators. There are certain constitutional limitations upon the power of the Legislature that are addressed solely to it, and obedience to them is dependent alone upon the conscience of the Legislature; and whether such limitations have been regarded or disregarded the court will not inquire. Illustrations of this class of limitations may be found where courts have declined to determine whether a special or local law should be passed instead of a general law, when the Legislature has passed a special or local law, notwithstanding the constitutional limitation that no local or special law shall be passed where · a general law may apply. A long line of these cases may be found from *Boyd* v. *Bryant,* 35 Ark. 69, to *Hendricks* v. *Block,* 80 Ark. 333, applying this principle. Other illustrations are found where notice is required before a local act should be passed, or

where a fact is to be established as a prerequisite to the passage of the bill.  Courts will not inquire whether such notice has been given or . such fact established, as it is conclusively presumed that the Legislature did its duty in the premises.  *State* v. *Sloan*, 66 Ark. 575; *State* v. *Moore*, 76 Ark. 197; *Waterman* v. *Hawkins*, 75 Ark. 120; and numerous other cases mentioned in these. Judge Cooley gives other examples of this class of limitations. Cooley on Constitutional Limitations, 257 *et seq.*

But the constitutional limitation in question does not belong to the class above mentioned.  It created a vested property right in owners of real estate in cities and towns.  It is a guaranty to them that their property shall not be taxed for local improvements except upon an *ad valorem* basis, and upon the consent of a majority in value of those to be affected by such improvement.  Having this constitutional guaranty that their property shall not be subject to assessment except in this manner, then, until it is assessed in this manner, they have a right to object to any taxation upon it for the purpose of local improvements.  This right can not be taken from them by an assumption that the Legislature ascertained that a majority desired this improvement, as this limitation created and protects a property right, and is not a mere direction to the Legislature. The right of property owners to a hearing before their property can be subjected to this tax can not be taken away by presumptions of regularity of legislative proceedings.  The only way in which this constitutional requirement can be fulfilled is by the enactment of such a statute as section 5667 *et seq.* of Kirby's Digest, wherein a certain procedure is prescribed to obtain the consent of a majority in value, and a forum to determine whether such consent has been obtained.  When such a plan is devised, then the local improvement may be undertaken, provided a majority in value consent thereto; and when it is determined in a forum where property owners may have their day that such majority has consented, then a legal basis is laid, and the improvement may be undertaken, with an *ad valorem* and uniform assessment levied upon the real estate in the district to pay for it.  Until such plan as prescribed in the section just cited or some similar plan which likewise meets the constitutional requirements is provided, the Legislature is powerless to impose

an assessment for local improvement in cities and towns. It is not the province of the Legislature to determine whether such consent has been obtained as a basis for the improvement. Its province is to create a procedure for obtaining such consent and a forum to determine whether such consent is obtained. This is admirably provided in the existing general law on the subject.

This act fails to carry such provision, or to permit the general law to apply, and has created a district and laid a tax upon the property therein directly in violation of section 27 of article 19 of the Constitution, and it is the duty of the court to hold it to be null and void.

Judgment reversed, and cause dismissed.