BELL v. PHILLIPS.

Opinion delivered January 4, 1915.

1. IMPROVEMENT DISTRICTS—FORMATION—PETITION — DESCRIPTION. — The original petition for the formation of an improvement district will be held insufficient where it does not contain any description of the boundaries of the proposed district, and where it can not be ascertained from the petition what territory was included in the proposed district.

2. IMPROVEMENT DISTRICTS—ORDINANCE—VALIDITY— FORMATION.—Where the petition for the formation of an improvement district is insufficient because of an insufficient description of the property to be included in the district, the ordinance passed in pursuance of said petition can not be held to be in due form and legally passed.

3. IMPROVEMENT DISTRICTS—LOCAL IMPROVEMENT—SUFFICIENCY OF DESCRIPTION.—A petition for a local improvement asked that the "Public Square and that part of Center Street, Mountain Street, Block and East streets known as the Public Square and adjacent thereto be included in the improvement district. Held, the description was too uncertain and indefinite to be the foundation for an improvement district.

4. IMPROVEMENT DISTRICTS—INITIAL PETITION—VALIDITY.—The validity of the initial petition for the formation of an improvement district is jurisdictional, and when such petition is not in conformity with the law, the district can not be created.

5. IMPROVEMENT DISTRICTS—VALIDATING ACTS.—The legal effect of a legislative enactment seeking to cure defects in the formation of an improvement district is to cure all omissions prior to the pas-

sage of the act which might have been dispensed with by legislative act.

6. IMPROVEMENT DISTRICTS—INITIAL PETITION—RIGHT OF LEGISLATURE TO DISPENSE WITH.—In the formation of improvement districts, the Legislature might have dispensed with the requirement that an initial petition be signed by ten resident owners; and it is within the power of the Legislature to make valid any ordinance that would otherwise be void because of a failure to file the initiatory petition of ten in compliance with the statutes. Kirby's Digest, § § 5665-6.

7. LOCAL IMPROVEMENT DISTRICTS—PETITION OF MAJORITY. — Local improvements in cities and towns must be based upon the consent of a majority in value of the owners of real property in the improvement district proposed, under art. 19, § 27, Const. 1874, and this fundamental prerequisite can not be dispensed with in the first instance, or cured thereafter.

8. LOCAL IMPROVEMENT—FORMATION—CONSENT OF MAJORITY—VALIDATING ACT.—The failure to obtain the consent of a majority in value of the owners of real property in an improvement district designated in a city ordinance, renders the ordinance and all proceedings thereunder void, and the same can not be validated by legislative enactment.

Appeal from Washington Chancery Court; *L. H. McGill,* Special Chancellor; reversed.

STATEMENT BY THE COURT.

On December 5, 1912, there was presented to the city council of Fayetteville a petition signed by ten resident owners of real property within a proposed improvement district in the city of Fayetteville, praying for an improvement district. The petition described the property as follows: ''Dickson street from the west line of the St. Louis & S. F. Ry. Co. right-of-way to the west line of College avenue, Block street from Dickson street, the Public Square, East street from Dickson street to the Public Square, and the Public Square (except the part thereof owned by the United States Government used as a postoffice site), and the parts of Center, Mountain, East and Block streets adjacent to the Public Square.''

On December 9, 1912, the city council passed an ordinance, numbered 301, ''in compliance with the request of the petition heretofore filed.'' After reciting the filing of the petition and setting out the description of the

property contained therein as the same was described in the petition, the ordinance creating the district described it as follows:

"Beginning at a point which is one hundred and fifteen feet east and twenty-five feet north of the southwest quarter of the northeast quarter of section sixteen, township sixteen north, range thirty west, and running thence north one hundred and ninety-five feet; thence east twenty-five hundred feet, more or less, to the west line of College avenue; thence south four hundred and five feet, more or less, to the southeast corner of lot A, block one, original town (now city) of Fayetteville; thence west two hundred feet, more or less, to the north line of Spring street; thence west eighty-one feet; thence south one hundred and fifteen feet, more or less, to the south line of Mountain street; thence west one hundred and twenty-five feet; thence south eighty feet; thence west eighty-five feet, more or less, to the west line of East street; thence south ninety feet to an alley; thence west two hundred and seventy feet, more or less, to the west line of Block street; thence south seventy feet to the southeast corner of lot four, block thirty-one, original town (now city) of Fayetteville; thence west one hundred and fifty feet to an alley; thence north sixteen hundred and eighty-five feet, more or less, to the southeast corner of lot two-A block three, original town (now city) of Fayetteville; thence west two hundred and five feet to the west line of Church street; thence south eighty feet, more or less, to the southeast corner of lot three-A, sub-division of block four, original town (now city) of Fayetteville; thence west three hundred and fifteen feet, more or less, to the southwest corner of lot four, in said block four, original town (now city) of Fayetteville; thence north fifty feet; thence west three hundred and sixty feet, more or less, to the southwest corner of lot six in block five, original town (now city) of Fayetteville; thence west four hundred feet to the west line of West street; thence north sixty feet; thence west two hundred and sixty feet, more or less, to the west line of the St. Louis & San Fran-

cisco Railroad Company's right-of-way; thence north to
the place of beginning.''

The ordinance designated the district as No. 1. At
a meeting of the city council held on the 2d of January,
1913, there was presented a petition purporting to be
signed by a majority in value of the owners of real prop-
erty within the proposed improvement district referring
to and reciting therein the same description as contained
in the petition of ten and praying that the improvement
provided for in Ordinance No. 301, District No. 1, be
undertaken and that the cost thereof be assessed and
charged upon the real property situated within the dis-
trict. The council considered the petition and ascertained
that it contained a majority in value of the owners of real
property within the district and adjoining the locality to
be affected, and, by its resolution, appointed a board of
commissioners for the district who qualified and entered
upon their duties.

On the 6th of February, 1913, the city council passed
a resolution reciting that Ordinance No. 301, passed on
the 9th of December, 1912, creating the improvement
district ''erroneously described parts and parcels of the
lots and blocks of real estate to be improved in said im-
provement district,'' and for that reason declared that
Ordinance No. 301, creating the improvement district and
appointing the board of improvement, was null and void.
The council, at the same meeting, passed another ordi-
nance, numbered 304. This ordinance recited that it was
based on the petition of ten resident property owners
upon which Ordinance No. 301 had been passed, which
erroneously described the proposed property embraced
in the proposed district and for that reason had been de-
clared void. The ordinance (No. 304) then described the
property in the district, the same as it was described in
Ordinance No. 301, except that in describing the bounda-
ries of the district the beginning point was properly
designated, and the property in the district otherwise
laid off by a correct description. In other words, the
boundaries of the district, in Ordinance No. 304, were

properly fixed and described. This ordinance designated the district as District No. 1, the same as it had been designated in the ordinance which had been previously declared void by the council; and the ordinance described the kind of material with which the streets were to be paved, and declared that all ordinances and parts of ordinances in conflict therewith were repealed, and that the ordinance take effect from the day that it was passed and approved, February 6, 1913.

The council also, on the same day, passed a resolution naming as the board of commissioners for the improvement district the same men that had been previously named.

The Legislature passed an act, approved March 6, 1913, which provided, "that the ordinance passed by the council of the city of Fayetteville on the 6th day of February, 1913, creating an improvement district and defining the boundaries thereof, be made valid and all acts and proceedings done or had, or to be done or had thereunder, be made legal." The act did not contain the emergency clause.

The board of improvement selected an engineer and duly contracted with him and he proceeded to make plans and specifications for the proposed improvement. The board advertised for sealed bids for paving the streets provided for by the ordinance according to the plans and specifications of the engineer. Thereafter certain property owners who became dissatisfied with the kind of material that was proposed to be used for paving the streets adopted a resolution in which they requested the commissioners "to take no further steps at this time or hereafter until directed by a majority in value of the property owners in the district or create any expense in the formation or completion of said district," * * * and requested the city council to "take no further steps in any matter pertaining to said district at this time or hereafter until requested or directed to do so by a majority of the assessed value of the property owners in the district."

Copies of this resolution were served upon the commissioners and the city council, in the forenoon of August 23, 1913. In the afternoon of the same day the board of improvement entered into a written contract with the Kaw Paving Company, of Topeka, Kansas, to make the improvement according to the specifications, which were attached. It was provided in the contract "that the company should not begin work nor demand payment nor be required to furnish bonds until notified by the board that financial arrangements had been completed whereby the company could be promptly paid."

Early in September, 1913, this suit was instituted by the appellants. They alleged that they were the owners of real property situated within the proposed district, and, among various other things, they alleged that Ordinance No. 304 was not petitioned for; that a majority in value of the real property to be affected by such improvement district did not ask for the improvement to be made; that the act of the Legislature was in no manner binding upon the property owners, and "did not make legal or valid illegal acts and proceedings of the city council; that the act did not take effect until June 4, 1913, and that since June 4, 1913, there had been no petition of the property owners asking the council to assess any benefits to the property situated in said proposed improvement district, and that more than three months had elapsed since the passage of the ordinance and the passage of the act of the Legislature.

The court, among other things, found that the original petition, on which ordinances Nos. 301 and 304 were based, was signed by as many as ten owners of real property within the proposed district, but that the same was insufficient because it did not contain any description of the boundaries of the proposed district, and it could not be ascertained therefrom what territory was intended to be included in the district; that Ordinance No. 301 was in due form and legally passed; that the boundaries of the district, as described therein, could be easily ascertained and distinguished by taking the description as a whole and rejecting the false description as to the beginning

point; that Ordinance No. 304 was founded on the original petition presented to the council on the 9th of December, 1912, and was in legal effect nothing more than Ordinance No. 301 amended; that is, that it amended the error in the description of the beginning point, which Ordinance No. 301 did not correctly set forth; that the act of March 6, 1913, was sufficient to make valid the creation of the improvement district created by Ordinance No. 301 as amended by Ordinance No. 304, and that the legal effect of the act was to cure all omissions prior to the passage of the act which might have been dispensed with by the legislative act, including the failure to describe the boundaries of the district in the original petition.

The court further found that the petition of the property owners presented to the council on January 2, 1913, was signed by a majority in value of the owners of real estate in the proposed district.

The court found that the plaintiffs were not entitled to the relief prayed for in their complaint and entered a decree dismissing the same for want of equity. This appeal has been duly prosecuted.

*E. P. Watson,* for appellants.

1. Ordinance 301 was void because the petition upon which it was based was a nullity at the time it was presented to the council. No intelligent action could be taken thereon because the description of the boundaries of the territory affected was so vague and indefinite that they could not be ascertained. Kirby's Dig., § 5665; 108 Ark. 144; 71 Ark. 556; 59 Ark. 344; 103 Ark. 269.

2. The petition introduced at the meeting of the city council on January 2, 1913, recites the petition filed December 9, 1912, and the same description as the petition of that date and the passage of Ordinance No. 301. It is necessarily void. It is void for the further reason that it does not specify the kind of material to be used, the cost of the improvement and the amount for which the owners are to be taxed. 103 Ark. 269; 81 Ark. 98; Kirby's Dig., § § 5667, 6717, 6987; 50 Ark. 126; 59 Ark. 344; 95 Ark. 575.

3. Ordinance No. 304, based upon the same petition as Ordinance No. 301, is void for the same reasons. The chancellor's findings that it is in legal effect nothing more than Ordinance No. 301 amended, is clearly erroneous. If intended as an ordinance amending Ordinance No. 301, it should have so stated in its title. Kirby's Dig., § 5481.

If Ordinance No. 301 is void, it can not be amended. 61 Ark. 238; *Id.* 622; 31 Ark. 701; 28 Cyc. 383; *Id.* 391.

4. The curative act of March 6, 1913, Acts 1913, p. 591, is not sufficient to validate these proceedings. If the Legislature can make valid a void ordinance which attempted to create an improvement district in a town or city, it can by act create a district therein, and we deny that it has any such power. The constitutional declaration that the General Assembly shall not be prohibited from authorizing assessments on real property for local improvements in towns and cities *under such regulations as may be prescribed by law,* Art. 19, § 27, Constitution, presupposes that the Legislature must first prescribe a method for the creation of such districts, and that the people who desire to tax themselves for such improvements must follow that regulation. 84 Ark. 390.

If it is jurisdictional that a proper petition of ten real property owners be filed before an ordinance can legally be passed, and the same is not done, the Legislature can not by act cure such fatal defect. It can only cure irregularities in the exercise of a power already legally possessed. Abbott on Mun. Corp., 945, § 387; 10 Am. & Eng. Enc. of L. (2 ed.) 299.

*H. L. Pearson* and *B. R. Davidson,* for appellees.

1. On the proposition that the boundaries in the petition were not sufficient: It was never contemplated by the statute, Kirby's Dig., § 5665, that the original petition should describe the boundaries with the particularity that the ordinance passed on the petition of ten should describe it. The second petition is required to be made by the property owners within the boundaries described in the ordinance, and includes those "adjoining the locality to be affected," and upon the presentation of

this petition the council is authorized to act and appoint the board. Kirby's Dig., § 5667.

The action of the council in determining the boundaries is conclusive except for fraud or demonstrable mistake. 56 Ark. 107.

In *Boles* v. *Kelly,* 90 Ark. 29-36, it was contended that the lines did not connect by one mile, but the validity of the district was upheld.

The purpose of the act is accomplished if it is sufficient to call the attention of the land owners. 103 Ark. 452-463.

2. Ordinance 301 was valid and Ordinance 304 was simply to correct a clerical error; if, however, Ordinance 301 was void, as contended by appellants, then the petition for that ordinance could be used for the passage of another ordinance.

3. Plaintiffs were estopped from calling in question the legality of the organization of the improvement district. They had signed the petition for the formation of the district, thereby representing that a majority in interest were petitioning; had allowed the board to incur great expense employing an engineer, causing surveys to be made; had allowed a contract to be made with the engineer, allowed advertisements to be made, and insisted on re-advertising. All attended meetings for the purpose of selecting material. They recognized the board in many ways, and stood by and let a party contract to do this work after having made a deposit of money for a long period of time. 50 Ark. 116-130-132; 2 Pomeroy, Equity, § § 801-804; 54 Ark. 491; 38 Ark. 572; 64 Ark. 628; 81 Ark. 143; *Id.* 208-220; 91 Ark. 141.

4. The act of the city council on December 9, 1912, correcting the description in Ordinance 301, said ordinance and that of February 6, 1913, were validated by the Acts of 1913, p. 591.

The first petition required to be presented is simply a matter of procedure. The Legisatlure had the right to do away with the petition entirely if it saw fit to do so. The second petition, requiring a majority in interest to sign, is, of course, jurisdictional under the Constitution.

Wood, J., (after stating the facts). (1) The court correctly found that the original petition upon which ordinances 301 and 304 were based "was insufficient because it did not contain any description of the boundaries of the proposed district and because it could not be ascertained therefrom what territory was included in the proposed district."

In *Kraft* v. *Smothers*, 103 Ark. 269, 272, we said: "The foundation of the improvement was the petition of the owners of real property situated in the proposed district. Under the statute, the extent and character of the improvement as expressed in the ordinance must substantially comply with the terms of the petition upon which it is based."

And in the later case of *Smith* v. *Improvement Dist. No. 14*, 108 Ark. 141, 144, we said: "Our statutes require, as a prerequisite to the exercise of the authority conferred upon the city council, that a petition be first filed designating the boundaries of the district so that it may be easily distinguished. This is for the benefit of the property owners. * * * A special limited jurisdiction is conferred upon the city council to lay off the district as designated by the property owners in the first petition, and the council must conform strictly to the authority conferred upon it."

In *Board of Imp. Dist. No. 60* v. *Cotter*, 71 Ark. 556-61, we held that "the filing of the required petition signed by ten resident property owners was mandatory and jurisdictional." See also *Whipple* v. *Tucksworth*, 81 Ark. 403; *Boles* v. *Kelly*, 90 Ark. 34.

(2-3) The court therefore erred in holding that Ordinance No. 301 "is in due form and was legally passed." There was no petition signed by ten property owners in the proposed improvement district, containing such a definite description of the property as to enable the city council to designate the boundaries of the local improvement district proposed so that it could be easily distinguished, as required by section 5665 of Kirby's Digest. The petition asked that the "public square and that part of Center Street, Mountain Street, Block and

East streets known as the Public Square and adjacent thereto'' be included in an improvement district. This was too uncertain and indefinite in the way of description to be ''foundation'' for an improvement district.

(4) There was no initial petition, such as the statute contemplates, and which is jurisdictional for the creation of an improvement district, and ordinances 301 and 304 and the proceedings thereunder were, therefore, void, unless the same were cured by the act of March 6, 1913.

(5-6) The trial court was correct in declaring that the legal effect of the act ''was to cure all omissions prior to the passage of the act which might have been dispensed with by legislative act,'' for this is a well established rule. *Cupp* v. *Welch,* 50 Ark. 294; *Sidway* v. *Lawson,* 58 Ark. 117; *Lanzer* v. *Butt,* 84 Ark. 335. Although the filing of the petition of the ten property owners was a prerequisite to the formation of the improvement district, as held in *Board of Improvement* v. *Cotter, supra,* yet this mandatory and jurisdictional requirement was prescribed, not by the Constitution, but by the act of the Legislature. The Legislature could have dispensed with this initial petition of ten resident owners in the first instance. There is nothing in the Constitution to inhibit the Legislature from providing for the creation of local improvements in cities and towns without such petition. Therefore, it was within the power of the Legislature to make valid any ordinances that would otherwise be void because of a failure to file the initiatory petition of ten in compliance with the statute. Kirby's Digest, § § 5665-6. And if Ordinance 304 was void when passed only because it was not based upon the petition of ten resident property owners, then the act of March 6, 1913, by curing that ordinance, validated the improvement district. But the record shows that the petition of a purported majority in value of the owners of real property in the district asking that the improvement be made contains the same vague and defective description as to the initiatory petition of ten. The petition of the purported majority prays that the improvement provided for by Ordinance 301 be made. But Ordinance 301

was void because it was based upon the insufficient petition of ten, and also because the description contained in the ordinance itself was fatally defective. Ordinance No. 304, of February 6, 1913, expressly declared that Ordinance No. 301 "erroneously described parts, lots and blocks of real estate," and that said Ordinance 301 and the board of improvement were null and void. Ordinance No. 304 then established the alleged improvement district and correctly described it by designating the boundaries thereof. But neither before nor since the passage of this ordinance (304) has there been presented to the city council of the city of Fayetteville a petition signed by a majority of the owners, in value, of the real property in the proposed district designated in Ordinance No. 304, praying for the improvement to be made in the proposed district as described in that ordinance. This was a constitutional, and therefore indispensable, requirement for the validity of the improvement provided for by Ordinance 304.

(7-8)    Local improvements in cities and towns must be based upon the consent of a majority in value of the owners of real property in the improvement district proposed.    Art. 19, § 27, Constitution of Arkansas. This fundamental prerequisite can not be dispensed with in the first instance, or cured thereafter. *Crane* v. *Siloam Springs,* 67 Ark. 30; *Craig* v. *Russellville Water Works Imp. Dist.,* 84 Ark. 390. The failure to obtain the consent of a majority in value of owners of real property in the improvement district designated in Ordinance 304 to the proposed improvement rendered that ordinance and all the proceedings thereunder void, and the appellants under the evidence in this record were not estopped from setting up the invalidity of the improvement district for the above reason. *Imp. Dist.* v. *St. Louis S. W. Ry Co.,* 99 Ark. 515, and authorities cited; *Craig* v. *Russellville Water Works Imp. Dist.,* 84 Ark. 390. See also, *Watkins* v. *Griffith,* 59 Ark. 360. See, also, *Lewis* v. *Rieff,* 114 Ark. 366, and *Harnwell* v. *White,* 115 Ark. 88, as to powers of improvement districts.

The decree of the chancery court is therefore erroneous, and it is reversed and the cause is remanded with directions to grant appellants the relief they ask.