## COX *v.* ROAD IMPROVEMENT DISTRICT No. 8 OF LONOKE COUNTY.

### Opinion delivered April 5, 1915.

1. IMPROVEMENT DISTRICTS—PETITION—DESCRIPTION OF IMPROVEMENT.— The petition for the formation of an improvement district is jurisdictional, and its recitals must meet the recitals of the statute. The petition must make clear the improvement proposed, although details and plans may be worked out by the board, after the establishment of the district petitioned for.

2. IMPROVEMENT DISTRICTS—PETITION—UNCERTAINTY.—A petition for the formation of a road improvement district, which recites that it is proposed to improve *some* of the roads in the proposed district, is void, because of insufficiency and uncertainty of the description.

3. ROAD IMPROVEMENT—PUBLIC ROADS.—Road improvement districts can not be formed, and authorized to lay out and establish new public roads, and impose upon the county the duty of maintaining them.

4. ROAD IMPROVEMENT DISTRICTS—PETITION OF MAJORITY OF LAND OWNERS.—A road improvement district may be formed upon a petition of a majority only in numbers, of property owners within the proposed district.

5. IMPROVEMENT DISTRICTS—ROADS—ASSESSMENT OF TOWN PROPERTY.— The county court may include and assess town property for the purpose of building or improving roads out in the county, and outside the corporate limits of the town, the controlling test is whether the property in the town will be benefitted by the improvement.

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; reversed.

### STATEMENT BY THE COURT.

The Legislature of 1913 passed an act, numbered 212, applicable only to Lonoke and Prairie counties, wherein it created and defined the geographical limits of four road improvement districts, said districts being incorporated and respectively designated as Road Improvement Districts 1, 2, 3 and 4 of Lonoke County.

After creating these districts, section 1 of the act provides, beginning with subdivision F thereof, for the

organization of road improvement districts which may be desired in the future.

Proceeding under subdivision F of section 1, owners of lands lying in township 1 south, range 9 west, of Lonoke County, being more than ten in number, filed their petition with the clerk of the county court, praying for the creation of Road Improvement District No. 8. This proposed district embraced about 8,800 acres of land, and includes all lots and parcels of land within the limits of the incorporated town of Keo, in said township and county.

Appellants herein, remonstrants below, are owners of lands out in the township and some few are owners of lots in the incorporated town of Keo. At the date set for the hearing of the petition in the county court, remonstrants, thirty or more in number, filed their remonstrance, in which various objections were urged against the establishment of the proposed improvement district. After hearing the issues, the county court ordered and adjudged the creation of the district as petitioned for. Remonstrants perfected their appeal to the circuit court, where the cause was tried upon an agreed statement of facts, and after hearing the issues the circuit court affirmed the judgment of the court below. Remonstrants have appealed from that judgment.

The petition for the establishment of the improvement district recites that a plat, showing, generally, the location of the roads which it is proposed to improve, was filed with the petition as an exhibit thereto. But no such plat appears in the record. Upon the contrary, the cause was tried upon an agreed statement of facts, from which it appears that there was no designation of the roads which it was proposed to improve.

The agreed statement of facts is as follows:

"It is agreed by the parties hereto through their respective attorneys, that this cause now pending in this court on appeal from the Lonoke County Court may be

heard and decided upon the following statement, which contains all the facts involved in this cause, towit:

"That the petition asking for the creation of Road Improvement District No. 8 of Lonoke County, Arkansas, was filed in the Lonoke County Court on June 25, 1914, and after full compliance with the provisions relative to notices, etc., of Act 212 of the Acts of 1913, the same was acted upon by the county court, which, over the objection of remonstrants, entered an order on July 16, 1914, creating said district, whereupon proper affidavit stating causes for review was made by remonstrants and appeal granted; that said proposed district contains about eight thousand acres of land, the limits of which are properly defined, and that same is located in township one (1) south, range nine (9) west, Lonoke County, Arkansas; that the proposed district includes Keo, an incorporated town situated in said county, containing one hundred and sixty acres; that the purpose of the proposed Road Improvement District No. 8 is to improve some of the public roads within its limits, but no improvements are to be made within the corporate limits of Keo; that said petition praying for the creation of the said road improvement district contains the names of a majority of the owners of land within the proposed district, and a majority in land values, excluding the St. Louis Southwestern Railway right-of-way, but including same there is no majority in land values; that a majority of the owners of lands and land values in Keo signed the petition, but excluding from the petition the names of owners of land and land valuations in Keo, there is not a majority; that to pay for the improvement of said county roads within the district, all property lying within the district, including all property within the limits of the incorporated town of Keo, will be assessed under the order of the county court.

"That no ordinance has been passed by the town council of Keo, creating the district or assessing property within its limits to pay for the improvement of said county roads.

"Question: Under the above statement of facts should the judgment of the county court be affirmed or reversed?"

*Dunaway & Chamberlin*, for appellants.

1.    The order of the court in establishing the district is void because of the insufficiency, of the petition.

*Chas. A. Walls* and *Jas. B. Gray*, for appellee.

1.    The order creating the district is valid.

SMITH, J., (after stating the facts).    Subdivision F of section 1 of the act in question provides that hereafter, when ten or more owners of real property within a proposed improvement district shall petition the county court to establish a road improvement district to embrace a certain region, describing generally the region which it is intended shall be embraced within the boundaries of the proposed district, and shall file a plat with said petition upon which the boundaries of the proposed district are plainly indicated, showing the roads to be constructed, as nearly as practicable, it shall then be the duty of the county court to give notice by publication of the filing of·this petition for the purpose of calling upon all property owners within the proposed district to appear on a designated day and show cause for or against the establishment of the district.

The first question which naturally arises is, Has this requirement been complied with?    Various other questions are discussed in the respective briefs; but we find it unnecessary to consider those questions for the reason that the petition does not meet the requirements of the act under which the proceeding was had.    The petition may describe the improvement contemplated in general terms and leave the plans for the future development of the board.    *Ferguson* v. *McLain*, 113 Ark. 193, 168 S. W. 127; section 6 of Act 212 of Acts of 1913.

(1)    There is not, of course, the same necessity for accurate descriptions of the roads which an improvement district embracing rural property is intended to improve

as there is for an accurate description of streets in a town or city; but the legal principles which govern in one case must be applied in the other. It is essential in both cases that there be no uncertainty about the improvement which it is proposed to make. All of the cases under our improvement district law treat the petition as jurisdictional, and hold that its recitals must meet the requirements of the statute. All of these decisions make it plain that there must be no uncertainty about the improvement proposed. The details and plans of the improvement may be worked out by the board of improvement after the establishment of the district petitioned for, but the discretion of the board is limited to carrying out the purpose of the petition. It is not contemplated that upon and after the establishment of the district there shall be any doubt about the improvement to be constructed. Otherwise, property owners might sign the petition under the apprehension that a certain road or street was to be improved, only to learn after the district had been established, and the plans had been approved, that they were mistaken or had been deceived. One of the purposes of requiring a petition in writing is to prevent such controversies. *Harnwell* v. *White,* 115 Ark. 88; *Kirst* v. *Street Imp. Dist.,* 86 Ark. 21; *McDonnell* v. *Imp. Dist.,* 97 Ark. 341; *Smith* v. *Imp. Dist.,* 108 Ark. 141; *Kraft* v. *Smothers,* 103 Ark. 269; *Bell* v. *Phillips,* 116 Ark. 167, 172 S. W. 864; *Board of Improvement* v. *Brun,* 105 Ark. 65; *Boles* v. *Kelley,* 90 Ark. 29; *Watkins* v. *Griffith,* 59 Ark. 344.

(2)   The agreed statement of facts here recites that it is proposed to improve *some* of the roads in a district embracing 8,800 acres of land. To establish this district would clothe the commissioners with a roving commission which would be controlled only by their own discretion. The use of the word "some" implies that there are roads in the district which are not to be improved, and this record does not attempt to distinguish between the roads which are to be improved and those which are not to be improved. If such indefinite improvements could

be established, no petitioner could ever know, until after the district had been established, when his knowledge would prove unavailing, whether the road he thought would be improved was the one which was to be improved.   In the very nature of things, the act in question did not contemplate that there should be any such uncertainty, and the order of the court in establishing the district is, therefore, void because of the insufficiency of the petition.

The judgment of the court below is, therefore, reversed, and this cause will be remanded with directions that the court vacate and set aside its order directing the establishment of the district.

### ON REHEARING.

SMITH, J.   Upon petition for rehearing it is now stipulated that there was no uncertainty about the roads to be improved; that the roads were accurately described in the petition for the establishment of the district, and upon the plats showing the proposed improvement, which were attached to and made a part of the petitions, and that the agreed statement was prepared for the purpose of shortening the record upon the appeal to this court. We are now asked to decide the case which the parties say was tried below.

Three grounds for reversal of the judgment of the lower court are presented and urged by appellants in this appeal.   The first raises the question of the power of the Legislature to grant road improvement districts authority to build or construct roads which thereafter will become county roads.   The second raises the question of the power of the Legislature to authorize the creation of road improvement districts based upon a petition containing the signatures of a majority in numbers only of the owners of land within the proposed improvement district.   The third raises the question of the authority of the county court to include and assess town property for the purpose of building or improving roads out in the county and without the corporate limits of the town.

The proposed district embraces only a small part of Lonoke County. It appears from the agreed statement of facts that the district lies wholly within township 1 south, range 9 west, and does not include the whole of that township. No attempt is made to show that the roads to be improved are too numerous, diverse or independent, or too remote from each other, to be embraced in one district and sustained by local assessments. *Road Imp. Dist.* v. *Glover,* 89 Ark. 513.

We discuss the questions involved in the order of their presentation.

(3)   It is first contended that the proceeding is void because its purpose is to authorize the construction of new roads. If such is its purpose, then the proceedings are void. In the case of *Road Imp. Dist.* v. *Glover, supra,* it was held that road improvement districts could not be formed and authorized to lay out and establish new public roads and impose upon the county court the duty to maintain them. The agreed statement, however, does not show any purpose to lay out and establish new roads and impose the burden of their maintenance on the county court; but it is recited that the purpose of the district is to improve certain of the public roads within the limits of the district. At another place in the agreed statement the roads are referred to as county roads, and we can not assume in the face of this stipulation that it is proposed to improve roads upon which the rights of the public have not already become fixed and the supervision and care of which has not already been assumed by the county court.

(4)   The second ground of attack is that the petition does not contain a majority in value of the property owners, and that the Legislature can not authorize the establishment of an improvement district unless this assent is first secured. The act authorizes the creation of the proposed district upon the petition of a majority in value, acreage or numbers of the property owners, and it is agreed that a majority in number have signed the petition.

This question was considered in the case of *Butler* v. *Board of Directors Fourche Drainage Dist.,* 99 Ark. 100.

There an improvement district was established for the purpose of draining Fourche bottoms and certain contiguous territory. The boundary of the district included the whole of the city of Little Rock, and several adjoining townships outside of the city. As originally enacted, the act provided that the consent of a majority in value of the property owners should be secured. But the act was subsequently amended to dispense with this requirement, and it was insisted that this amendment rendered the act unconstitutional. The court did not take this view, however, and decided that the constitutional requirement that assessments on real property for local improvements in towns and cities shall "be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected" (article 19, section 27), does not forbid the creation in good faith of an improvement district lying partly within and partly without a city or town, without requiring the consent of a majority of the urban property owners within the district. In the opinion in that case it was said: "We are of the opinion that the above-quoted provision of the Constitution" (article 19, section 27, which requires the consent of the owners of a majority in value of the property adjoining the locality to be affected within the town or city in which the proposed improvement is located), "applies only to assessments for improvements purely local to a municipality, and not to local improvements covering wider territory, even though a part or all of the municipality be included therein. An improvement district like this, covering territory both in and out of a municipal corporation, does not fall within either the letter or the spirit of the constitutional provision. It is not a local improvement *in* a town or city, and therefore not within the letter of the constitutional prohibition. It is not within its spirit, for, there being no inhibition upon the creation of districts outside of cities or towns, there is no reason for construing the provision to mean that the consent of the property owners inside of the city or town must be obtained, whilst the wishes of the property owners in the

same district outside of the city or town may be ignored. It is obvious that the framers of the Constitution did not have in mind a provision which would operate upon lands in one part of an improvement district and not upon lands in other parts. The principle of uniformity would be violated if that be the proper construction of the provision, for many a local improvement, such as a drainage or levee district, affecting alike lands inside and outside of cities and towns, would be frustrated by the urban property owners withholding consent. Property outside of the city or town could not be taxed for the benefit of the property inside thereof, and thus the whole scheme would be defeated and suburban property left without means for improvement." See also *Less Land Co.* v. *Fender,* 119 Ark. 21, 173 S. W. 407; *Burton* v. *Chicago Mill & Lbr. Co.,* 106 Ark. 296; *Grassy Slough Drainage Dist.* v. *National Box Co.,* 111 Ark. 144; *Board of Dir. Jefferson County Bridge Dist.* v. *Collier,* 104 Ark. 425; *Shibley* v. *Fort Smith & Van Buren Bridge Dist.,* 96 Ark. 410.

(5)  It is urged that the county court had no authority to include and assess property in the town of Keo, because no part of the improvement was to be constructed within the limits of that town, and for the further reason that the town council of Keo has exclusive jurisdiction over its streets.   In answer to this contention, it may be said that the improvement district is not undertaking to take control of the streets of that town, and we need not decide, therefore, whether it could do so.   Upon the contrary, one of the grounds of appellant's attack is that none of the streets of that town are to be improved, but that all revenues derived from the assessments against the property in the town will be expended on roads lying without its limits.   But this fact can not defeat the district.   It can only be considered in determining what benefits will be derived by property within the corporate limits.   If no benefits are derived by the town property from the improvement, then no assessments can be levied against that property.   But if there are betterments, as

that term has been defined in a number of cases, then the town property should pay its just pro rata of the cost of the improvement.

Many cases discuss the theory of such assessments, but we need not review them here, as no quetion is made as to the manner of assessing, nor of the amount of the assessment, but only as to the right to make any assessment, and the determination of that question is one of fact not presented by this record.

The judgment of this court heretofore rendered reversing this case will be set aside, and the judgment of the court below will be affirmed.