HAMILTON *v.* BOARD OF IMPROVEMENT OF LIGHT AND WATER DISTRICT NO. 2, OF WYNNE, ARKANSAS.

Opinion delivered April 10, 1916.

1.  LOCAL IMPROVEMENT—CREATION OF DISTRICT BY LEGISLATURE—CONSENT OF MAJORITY.—The Legislature may, by special statute, create improvement districts in cities and towns; it may determine the necessity for the improvement and the method of ascertaining the benefits; or it may determine for itself what the benefits are and levy the assessments; but there is a constitutional guaranty that so far as concerns improvement districts in cities and towns, the power of taxation is dependent upon the expressed consent of the majority in value of the property owners within the locality to be affected.

2.  LOCAL IMPROVEMENT—CONSENT OF MAJORITY.—In the formation of a local improvement district, under the Constitution, the consent of the property owners must be affirmatively manifested, and some means must be provided by a statute attempting to organize such a district, for actually obtaining the consent of the property owners. Consent manifested by silence merely, is insufficient within the meaning of the statute.

3.  LOCAL IMPROVEMENT—FORMATION BY LEGISLATIVE ENACTMENT—CONSENT OF PROPERTY OWNERS.—In the formation of a local improvement district, the ascertainment of the consent of the property owners can not be dispensed with by the Legislature, and where the organization of such district has failed on account of something required by the Constitution the Legislature can not, in taking up the subject anew for the purpose of perfecting the organization, determine that a former expression of the consent of the property owners, may be treated as a renewed expression of the present consent of the property owners merely on account of their failure to appear and withdraw the former expression.

4.  LOCAL IMPROVEMENT—CONSENT OF PROPERTY OWNERS.—Act No. 5, page 9, Acts of 1915, entitled "An Act validating the organization of Water and Light Improvement District No. 2 of Wynne, and authorizing the organization of improvement districts for the

purpose of reconstructing and extending waterworks and electric light plants;" *held,* not to provide an adequate means of obtaining an affirmative expression of the will of the property owners, within the provisions of the Constitution.

Appeal from Cross Chancery Court; *T. E. Lines,* Special Chancellor; reversed.

*S. W. Ogan,* for appellant.

1. The act attempting to validate the district is unconstitutional and void. Art. 19, § 27, Constitution; 58 Ark. 117, 121; 26 Md. 195; 79 Ind. 274; 74 Mo. 457.

2. It levies an assessment without the consent of a majority of the property holders within the district. It also attempts to divest vested rights. Cooley, Const. Lim. 238; 54 Tex. 153; 31 Am. Rep. 218; 10 Barb. 223.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellees.

1. The act is not unconstitutional nor void. Its curative provisions dealt only with matters within the province of the Legislature and remedied those features that it could have dispensed with in the first instance. 83 Ark. 344; 112 *Id.* 357; 110 *Id.* 544; 114 *Id.* 23; 99 *Id.* 508; 29 *Id.* 99; 110 *Id.* 511, 514; 117 Ark. 93.

McCulloch, C. J. In the year 1912 there was an attempt to organize, under the general statutes of the State, an improvement district in the City of Wynne for the purpose of reconstructing, taking over and extending the system of waterworks theretofore constructed and put in operation by another improvement district. The district was declared to be organized and the petition of property owners asking for the construction of the improvement was duly filed with the city council, but subsequently litigation arose concerning the validity of the organization and on appeal to this court it was decided that the statutes conferred no authority for the organization of an improvement district for the purpose of reconstructing and taking over an improvement constructed by another district, for the reason that there was no legal warrant for such merger of the interests

of the two districts or for the new district to take over the property of the old one.   The organization was therefore declared to be invalid.   *Sembler* v. *Water & Light Improvement District No. 2*, 109 Ark. 90.

The General Assembly of 1915* enacted a special statute entitled "An Act validating the organization of Water and Light Improvement District No. 2 of Wynne, and authorizing the organization of improvement districts for the purpose of reconstructing and extending waterworks and electric light plants." The first section of the statute declared that the organization of said improvement district "is hereby validated and confirmed" and that "the plans of the commissioners heretofore reported to the city council in the City of Wynne are hereby confirmed."

Section 2 of the act reads as follows:  "As more than a majority of the owners of real property within the district aforesaid petitioned the City Council of the City of Wynne for the making of the improvements described in section 1 of this act, and consented that the cost thereof be assessed against the real property in the district according to the benefits received, now, therefore, if any owner of real estate within said district shall desire to withdraw his name from said petition and cancel his consent to the making of said improvement, he may do so within thirty days after the passage of this act by filing with the commissioners of said district a petition in writing, signed by himself, asking that his name be withdrawn from said petition and his consent cancelled.  Other owners of real estate within the district may sign said petition within said thirty days."

Section 4 provides that the chancery court should, on the first day that it is in session more than thirty days after the passage of this act, "ascertain whether said petition is signed by a majority in value of the owners of real property within said district, as shown by the last county assessment, and shall eliminate from said peti-

_____

*Act 5, page 9, Acts 1915 (Rep.).

tion all signatures in which the parties signing have filed with the commissioners in writing, expressing their desire to withdraw their names from said petition," and that "if on said hearing the said court shall ascertain that said petition is signed by a majority in value of the owners of the real property within said district, as shown by the last county assessment, it shall enter a judgment accordingly, and its finding in the premises shall be conclusive, subject to the right of appeal to the Supreme Court," and that if the court should find that said petition was not signed by a majority in value it should enter a judgment terminating the existence of the district.

The commissioners of the district are attempting to proceed under the new statute and this is an action instituted by a property owner of the district to restrain them from such proceeding, it being contended that the special act of the Legislature attempting to validate the organization of the district and to authorize further proceedings thereunder is unconstitutional and void. The chancery court dismissed the complaint for want of equity and an appeal has been prosecuted to this court.

(1)    It is a misapplication of the term to speak of the special statute under consideration as a validating act for the former organization of District No. 2 was unauthorized and void. It had no legal existence and it was so declared by the decision of this court. If the special statute has any force at all, its effect is to create a new organization where none existed prior thereto. The Legislature may by special statute create improvement districts in cities and towns. It may determine the necessity for the improvement and the method of ascertaining the benefits, or it may determine for itself what the benefits are and levy the assessments. But there is a constitutional guaranty that so far as concerns improvement districts in cities and towns, the power of taxation is dependent upon the expressed consent of the majority in value of the property owners within the locality to be affected. Constitution of 1874, article 19, section 27.

In construing this provision of the Constitution with respect to its requirement for ascertaining the consent of the property owners, we have said: "It created a vested property right in owners of real estate in cities and towns. It is a guaranty to them that their property shall not be taxed for local improvements except upon an *ad valorem* basis, and upon the consent of a majority in value of those to be affected by such improvement. Having this constitutional guaranty that their property shall not be subject to assessment except in this manner, then, until it is assessed in this manner, they have a right to object to any taxation upon it for the purpose of local improvements. This right can not be taken from them by an assumption that the Legislature ascertained that a majority desired this improvement, as this limitation created and protects a property right, and is not a mere direction to the Legislature. The right of property owners to a hearing before their property can be subjected to this tax can not be taken away by presumptions of regularity of legislative proceedings. The only way in which this constitutional requirement can be fulfilled is by the enactment of such a statute as section 5667 *et seq.* of Kirby's Digest, wherein a certain procedure is prescribed to obtain the consent of a majority in value, and a forum to determine whether such consent has been obtained. * * * Until such plan as prescribed in the section just cited or some similar plan which likewise meets the constitutional requirements is provided, the Legislature is powerless to impose an assessment for local improvement in cities and towns. It is not the province of the Legislature to determine whether such consent has been obtained as a basis for the improvement. Its province is to create a procedure for obtaining such consent and a forum to determine whether such consent is obtained." *Craig* v. *Russellville Waterworks Improvement District,* 84 Ark. 390; *Bell* v. *Phillips,* 116 Ark. 167.

(2) The question in the present case is whether or not the Legislature has met the constitutional re-

quirement by providing a method of ascertaining the will of the property owners with respect to the right to assess property to pay for the construction of the improvement. If it has done so then the statute is valid even though it constitutes the organization of the district by the Legislature itself and not the mere validation of the former organization. It will be observed that section 2 of the special statute starts out with the use of language which shows it was meant to be a determination that the majority of the owners of property in the district had already consented to the construction of the improvement and it then turns to a method of verifying that ascertainment by providing that if any property owner in the district who had signed the original petition desired to withdraw his name and cancel his consent he could do so within thirty days and that any other property owner who had not signed could sign the petition within the same period of time. The statute does not provide for any affirmative act on the part of the property owners who had already signed the petition unless they desired to withdraw from the petition. It treats the former petition as an expression of the will of the property owners and merely undertakes to give them an opportunity to withdraw their consent. We are of the opinion that this provision does not meet the constitutional requirement. It is not sufficient to say that it will be assumed that property owners who had signed the former unauthorized petition mean to express their consent to the new organization by failing to appear and ask that their names be withdrawn. That would constitute merely a legislative ascertainment of such consent without providing adequate means for a real ascertainment. It might as well be urged that the Legislature could create improvement districts without obtaining a petition at all, merely upon the assumption that property owners acquiesced by mere silence. The present statute does not even provide for any notice to the property owners. It is true that this is a special statute, and the presumption will be indulged that notice of its presentation to the Leg-

islature was given, but that is far from constituting notice to the property owners to appear in the chancery court to either ratify or repudiate their former signatures. The provision of the Constitution as construed in the case just referred to, means more than mere silent acquiescence by the property owners. It means that the consent of the property owners must be affirmatively manifested and that some means must be provided for actually obtaining the consent of the property owners. Consent manifested merely by silence was not within the contemplation of the framers of this constitutional provision.

(3-4) The decisions of this court cited by learned counsel for appellee do not conflict in any measure with the conclusions we reach with respect to the validity of the statute now before us. The latest case which they cite as sustaining their contention is *Gibson* v. *Incorporated Town of Hoxie,* 110 Ark. 544. That case, however, did not involve the question which we now have before us relating to an ascertainment of the consent of the property owners. In fact that question was not involved in the case at all, but the validating statute was only to cure defects which arose by the failure to give a notice which the Legislature might have altogether dispensed with in the first instance. That case fell within the principle so often announced by this court that it is within the power of the legislative branch of government to cure all omissions in proceedings as to matters which could have been dispensed with in the beginning. That question is not involved here, for, as we decided in the *Craig case, supra,* the ascertainment of the consent of the majority could not be dispensed with by the Legislature and we think that it necessarily follows that where the organization has failed on account of something required by the Constitution the Legislature cannot, in taking up the subject anew for the purpose of perfecting the organization, determine that a former expression of the consent of the property owners may be treated as a renewed expression of the present consent of the property owners merely

on account of their failure to appear and withdraw the former expression. The provision in the new statute does not in other words, provide an adequate means of obtaining an affirmative expression of the will of the property owners and therefore it does not meet the constitutional requirement.

It follows that the appellant is entitled to the relief for which he prays, and the chancery court erred in failing to grant that relief. The decree is therefore reversed and the cause remanded with directions to the chancery court to enter a decree in accordance with this opinion.

HART, J., dissents.